# FIFTH DISTRICT, 1897.

COLLEGE PARK ELECTRIC BELT LINE ET AL. v. A. L. IDE & SON.

Delivered January 2, 1897.

**1. Notice—Imputed Knowledge of Directors of Corporation as Charging Them Individually.**

Where a corporation purchased property on which the seller reserved a lien, and its directors knew of the purchase, and it was their duty to have known the terms of the purchase, they will by law be chargeable as individuals with notice of such lien.

**2. Same—Actual Notice—Putting on Inquiry—Mere Suspicion.**

It is not sufficient that the facts or circumstances brought to the knowledge of the party to be charged with notice of a given fact, are such as to cause a reasonably prudent man to suspect its existence, but they must be such as to put a reasonably prudent man upon inquiry, and of such a character as to lead to the discovery of the main fact by proper diligence in pursuing the inquiry.

**3. Foreclosure of Lien—Marshaling Assets—Pleading.**

In an action to foreclose a seller's lien upon property which the purchaser had resold to others, only such portion of the property can be made subject thereto as is owned by the parties charged with notice of the lien; and the doctrine of marshaling the assets of such (insolvent) purchaser, and enforcing the lien accordingly, has no application, at least in the absence of appropriate allegations as a basis therefor.

**4. Same—Notice—Proportional Foreclosure.**

Where several persons together purchased a piece of property subject to a prior lien, some of them having notice of it and others being without notice, the plaintiff in an action to foreclose the lien was entitled to foreclose on such proportional part of the whole property as the number of defendants with notice bore to the whole number.

**5. Corporation—Right of Directors to Mortgage its Property to Themselves.**

The directors of a corporation, acting in good faith, may advance money to it, may become its creditors, may take from it a mortgage to secure themselves, and may foreclose the mortgage as any other creditor, and they are not disabled by their fiduciary relation from bidding in the property for their protection at judicial or other public sale.

**6. Trust Deed by Corporation After Insolvency.**

The mere fact that the indebtedness of a corporation which is still a going concern exceeds its assets, does not render it insolvent, and its assets a trust fund in the hands of its directors for the benefit of creditors, so as to invalidate a trust deed executed by it. Rogers v. Lumber Co., 11 Texas Civ. App., 108, distinguished.

**7. Guaranty Contract.**

A letter from the president of the corporation to one of its creditors asking an extension of time on its debt, and in consideration thereof binding himself personally to pay the amount due at the date specified for the extension, with acceptance of the offer by the creditor, constitutes a contract of guaranty individually binding upon the president.

APPEAL from Grayson. Tried below before Hon. A. G. MOSELEY, Special Judge.

*Dillard & Muse* and *E. C. McLean*, for appellant.—1.   It was an error in the court to instruct the jury that all persons who were directors of the corporation at the time the corporation executed the mortgage of March 10, 1890, were in law chargeable with notice of plaintiff's lien, and that if the jury should find that any of said directors were beneficiaries in such mortgage, they should also find that such persons had notice of plaintiff's lien, as said charge is not the law.   The lien of plaintiff not having been recorded or registered as required by law, it then became a question of fact as to whether said directors had notice of plaintiff's lien or reservation of title, and it is not the law that they are chargeable without notice from the mere fact that they were directors.   Rudd v. Robinson, 22 Am. St. Rep., 816; Cook on Stockholders (3d ed.), sec. 727, and notes; Leggett v. New Jersey Mfg. Co., 23 Am. Dec., 728; Briggs v. Spaulding, 141 U. S. 132.

2.   The court erred in defining actual knowledge as being knowledge by information or otherwise, or that such facts or circumstances had reached defendant's knowledge as would make a reasonably prudent man suspect the existence of the lien.   Wethered v. Boon, 17 Texas, 150; Goldman v. Blum, 58 Texas, 639; Bryan v. Crump, 55 Texas, 15.

3.   The court erred in the charge informing the jury as to what proportion they should find a foreclosure for under the verdict as rendered, and should have instructed the jury to find for such fraction as the number of persons that they found had notice of and against whom they found on the issue of foreclosure, bore to the whole number of persons who purchased the property, or in proportion to the whole number of beneficiaries in the mortgage under which the property had been sold.

*J. W. Finley* and *J. F. Holt*, for appellees.—1.   The directors in law had notice of Ide & Son's lien, and the court properly so charged. Seale v. Baker, 70 Texas, 290; Kinkler v. Junica, 84 Texas, 116; Taylor on Corp., sec. 636; Morawitz on Corp., sec. 787, note 3; 37 Cal., 16.

2.   Most of the beneficiaries had notice, and as the transaction was single and entire, all were affected with notice, and the entire mortgages were subject to the lien of Ide & Son.   Garrett v. Burlington, 59 Am. Rep., 467, note; Taylor on Corp., sec. 636; Mor. on Corp., sec. 787, note 3; Seale v. Baker, 70 Texas, 291.

3.   The deeds of trust were made by order of the board of directors for the benefit of the directors and other stockholders and are void for want of parties.   A man cannot make a contract with himself.   Seale v. Baker, 70 Texas, 283; Bishop on Cont., sec. 22; Taylor on Priv. Corp., secs. 42, 44, 627, 628, 630, 636, 759; Mor. on Corp., secs. 517, 787, notes 3 and 795; Cook on Stock and Stockholders, sec. 661 and note; Wait on Insol. Corp., sec. 570; Butts v. Wood, 37 N. Y., 317; Coleman v. Railway, 38 N. Y., 201; Wilbur v. Lynde, 49 Cal., 290; Smith v. Los Angeles Assn., 29 Pac. Rep. (Col.), 677.

4. The corporation was insolvent and its directors and those acting with them held in trust for creditors the excess of value over what they paid for the property. Wrought Iron Range Co. v. Brooker, 2 Willson's C. C., sec. 226; Tobin Canning Co. v. Fraser, 81 Texas, 407.

5. If Ide & Son by their agent Post, agreed with Lee to take the latter's guaranty upon the terms offered, the charge asked, or one embracing its substance, should have been given. Railway v. Hodges, 76 Texas, 90; Johnson v. Bailey, 79 Texas, 516; Davis v. Wells, 104 U. S., 159.

RAINEY, ASSOCIATE JUSTICE.—This suit was brought by the appellees A. L. Ide & Son, against the College Park Electric Belt Line to recover on an indebtedness, and to foreclose a lien on certain property; and also, against N. M. Lee, as guarantor of said indebtedness, and against the other defendants as claimants of the property upon which the lien was sought to be foreclosed. Judgment was rendered against appellant, the Belt Line, in favor of appellees, for the amount of the debt, and for a foreclosure of the lien on said property to the extent of a five-eights interest.

The evidence shows that appellees sold to said Belt Line certain machinery, the contract of sale being in writing, and containing, among others, the following clause,—"The title to this machinery to vest in you only on full compliance with the above terms and conditions."

Subsequently, on May 17, 1890, to prevent appellees' agent, C. W. Post, from having said agreement recorded, N. M. Lee, the president and general manager of said Belt Line, agreed with the said Post to guarantee the payment of said indebtedness, if the latter would permit the account to stand open until June 10, 1890, and not record said contract of sale. This proposition was accepted.

On March 8, 1890, said Belt Line, through its proper officers, borrowed $12,000 in money from the Merchants and Planters National Bank, for which sum a note was duly executed by N. M. Lee, president and general manager, and signed by the other appellants, as sureties. To secure said note, a deed of trust was duly executed by N. M. Lee, as president and manager, conveying to D. E. Bryant, trustee, the property of said Belt Line Company; and was conditioned, among other things, that it was executed to save, secure and keep harmless the sureties on said note.

Afterward, said Belt Line borrowed $5000 from said bank, for which it executed its two separate promissory notes for $2500 each. On August 14, 1890, said Belt Line, by its vice-president, D. A. Simmons, executed another deed of trust to H. O. Head, conveying the same property as the former deed of trust, and was executed to secure said note for $12,000, and also the two notes for $2500 each; and contained clauses similar to the original deed of trust, and further, that it was an

additional security to said instrument, etc.   These instruments were duly recorded.

The money which the deeds of trust were given to secure was borrowed by said Belt Line to pay an indebtedness than existing against the concern, and it was reasonably expected at the time it was so borrowed that said Belt Line would be able to continue its business; but at that time its liabilities exceeded its assets.

Said Belt Line failed to pay said notes at maturity, and in January, 1891, H. O. Head, trustee, by virtue of said deed of trust, sold all of the property named in said deed of trust, and the same was bought in by W. M. Scott for the sum of $10,000, for the benefit of the sureties on said note; and said sureties then formed another corporation and paid the amount of the bid and all of the balance on the notes, with interest, amounting to about $18,000.   Six of said sureties, at the time of the transactions heretofore mentioned, were directors of the College Park Belt Line, which was a private corporation.

The appellant contends that the trial court erred in instructing the jury that the directors of the College Park Electric Belt Line, who were beneficiaries in the deed of trust, and who bought in the property at the sale under said deed of trust, were chargeable with notice of appellees' lien on the property sold by appellees to said Belt Line, and on which the lien is sought to be foreclosed, because said directors did not have actual knowledge of said lien, and said lien not having been recorded, at the time of the execution of the trust deed, said directors, by virtue of their office, were not chargeable under the law with notice.

There was some evidence tending to show that the directors had actual notice, or were in possession of such facts as to put them on inquiry, but not sufficient to authorize the court to assume they had notice; and such charge is erroneous, unless they are under the law chargeable with notice by reason of their relation to the corporation as directors.   One of the terms upon which the property was purchased by the Belt Line from Ide & Son, was that they should have a lien upon the property to secure the payment of the purchase money remaining unpaid.   The directors knew that the property was purchased from appellees, Ide & Son, and it was their duty to know the terms upon which the purchase was made.   "It is the duty of directors to know the condition of the corporation whose affairs they voluntarily assume to control, and they are presumed to know that which it is their duty to know and which they have the means of knowing."   Seale v. Baker, 70 Texas, 290.

In Morse on Banks and Banking, 131, et seq., it is said, "Whatever knowledge a director has or ought to have officially, he has, or will be conclusively presumed at law to have, as a private individual.   Thus a director is affected with notice of the conditions and transactions of the bank."

Directors are personally liable to those who are damaged by their false representations; though ignorantly made, if it concerns matters pertaining to the corporation of which they should have been officially

cognizant.    Seale v. Baker, supra, and Kinkler v. Junica, 84 Texas, 116.

We think the appellants, being directors of the Belt Line, should have known the terms of the contract of purchase of the property in question; and if they did not know, they were derelict in duty, and they cannot interpose such dereliction in bar of Ide & Son's right to foreclose their lien upon the property.

We are of the opinion that there was no error in the court charging the jury that the directors were chargeable with notice of plaintiffs' lien.

We think the court erred in the fifth paragraph of its charge in using the following language relating to notice, namely, "that such facts or circumstances had reached their knowledge as would make a reasonably prudent man suspect its existence."

This is too restricted in defining what constitutes actual notice. "Actual notice exists when knowledge is actually brought home to the party to be affected by it, or where he might by the use of reasonable diligence have informed himself of the existence of certain facts." Any fact or circumstance that is sufficient to put a prudent man upon inquiry and is of such a character that he might ascertain the fact by the exercise of proper diligence, will be regarded as notice.    Notice is a question of fact to be determined by the jury from all the facts and circumstances in evidence before them.    It is not sufficient that the facts or circumstances brought to the knowledge of the party are such as to cause a reasonably prudent man to suspect their existence, but they must be such as to put a reasonably prudent man upon inquiry, and of such a character as to lead to the discovery of the main fact by proper diligence in pursuing the inquiry.    Sickles v. White, 66 Texas, 178; Goldman v. Blum, 58 Texas, 630; Webb, Record of Title, secs. 219, 223.

Under the finding of the jury, this error was harmless, but in view of another trial, we think it proper to call attention thereto that it may not be repeated.

The following paragraph of the court's charge is assigned as error, viz:    "That plaintiffs were entitled to have their lien foreclosed second only to the rights of such beneficiaries in the mortgage of March, 1890, as had no notice of their lien.    The unincumbered part of the property embraced in said mortgage should first be devoted to the payment of the debt of such beneficiaries as were without notice of plaintiffs' lien before going upon the property which plaintiffs seek to foreclose.    You should determine from the evidence what fractional part of the $12,000 and interest, secured by mortgage of March, 1890, is to be preferred to plaintiffs' claim, under instructions given you in paragraph five of this charge.    Having ascertained such amount (and in this connection you are not to consider the two notes of $2500 each, or the mortgage securing the same) you are next to determine the reasonable market value of all the property and effects of the defendant, College Park Electric Belt Line (less the Sprague property and the Ide & Son property) at the time and place of the sale of such property in January, 1891.    Now, if such

value, so determined by you, should equal or exceed the amount heretofore reached by you, then, in that event, plaintiff would be entitled to a foreclosure on all the property described in the petition."

The objection to this charge is, that the issue presented therein is not raised by the pleadings and the evidence.

We think the objection well taken. There is an allegation that defendants bid in the property at the trustee's sale, worth $20,000, for the sum of $10,000, and that they subsequently bought in the claim of the Sprague Motor Company of $21,000, for $7000, and that defendants held this difference, $14,000, in trust for plaintiffs; but there is no evidence to show the value of the property purchased under the trust deed, other than the testimony of the defendants, who place its value at $10,000, which is less than the debt secured by the deed of trust.

This part of the court's charge, we take it, is based upon the theory of marshaling assets, which has no application under the pleadings and evidence of this case. The suit is for the foreclosure of a lien, and only such portion of the property can be subjected thereto as is owned by the parties charged with notice of the lien.

The jury were evidently misled by the foregoing charge. Their verdict was, in effect, a foreclosure of the lien on five-eighths of the undivided interest in the property. Unless this verdict was predicated upon such charge, there is no basis for it. Under the evidence, the interest of the directors only was chargeable with the lien, and their interest in the property amounts to only three-eighths—which makes an excess in the jury's verdict of two-eighths. The fifth paragraph of the court's charge was correct on this point, and all that was necessary to have been given, viz:

"If you should believe that a portion of said beneficiaries were properly chargeable with notice of plaintiffs' lien, and a portion not so chargeable, then you should find for plaintiffs' foreclosure of its lien on such proportional part of the whole property described in the petition as the number of such beneficiaries with notice bear to the whole number." The term "whole property described in the petition" meaning the property on which the lien existed.

There are quite a number of other assignments of error urged by appellants, but none are well taken, and we deem it unnecessary to discuss them.

Appellees have presented several cross-assignments which we deem it proper to here notice, in view of another trial.

The refusal of the court to give the following special charge requested by appellees is assigned as error, viz: "You are instructed that the directors could not make a valid deed of trust for their own benefit without a vote of the stockholders authorizing it, and a vote of the stockholders authorizing them to make a deed of trust to whoever would furnish money, would not authorize a deed of trust for the benefit of directors or of a majority of them. Nor would a vote of the stockholders

authorize a deed of trust for the benefit of the directors, provided the Belt Line was insolvent when such deed was made."

The evidence sufficiently shows that the stockholders authorized the directors to borrow money to liquidate the debts of the concern. The directors negotiated with the Merchants and Planters National Bank for a loan of $12,000, for which a note was executed by the defendants herein, six of them being directors of said Belt Line, and to secure the payment of said note a deed of trust was executed on certain property belonging to said Belt Line; and it was further stipulated, in effect, in said deed of trust, that it should inure to the benefit of the signers of said note in the event they had to pay the debt. The property was sold under said deed of trust, and to protect themselves, the signers of said note had to bid in the property. We do not see how any question can arise as to the validity of said transaction, aside from the question of the insolvency of said Belt Line, as to any of said parties not directors of said concern. Then the question arises on the validity of said transaction as to the directors interested therein.

Mr. Thompson, in his excellent work on Corporations, in treating of this subject, says: "We therefore find the prevailing doctrine to be that the directors of a corporation may advance money to it, may become its creditors, may take from it a mortgage or other security, and may enforce the same like any other creditor,—but always subject to severe scrutiny and under the obligation of acting in the utmost good faith * * * . So, it has been held that in order to enable a manufacturing corporation to pay its debts, and thus continue its business, its directors may guarantee payment of its note made to its own order, and take as security for their liability its mortgage of all its property. But in such case, it has been well observed, the obligation of the director who lends the money and takes the security, to candor and fair dealings, is increased in the precise degree that his representative character has given him power and control derived from the confidence reposed in him." 3 Thompson on Corporations, sec. 4068.

The same author says: "The principle which allows directors to deal with their corporation, and which makes contracts between them and it good in law, though subject to be avoided in equity upon any appearance of unfairness, has an analogy in the principle that directors are not disabled by the fiduciary relation which they occupy toward the company, from purchasing its property at judicial or other public sale." Id., sec. 4071.

We are of opinion that said directors were duly authorized to borrow the money and secure the same by the execution of the deed of trust on the corporate property. There is no evidence showing fraud or unfair dealing in the transaction, and if the clause in the deed of trust making them beneficiaries in the event they had to pay the debt should be held void, still, we are of the opinion they had the right to bid in the property at the sale, for their protection.

Having made themselves liable for the payment of the debt, it would

be a harsh rule that would force them to remain passive and allow property to be sacrificed at judicial sale for less than the debt, and require them to pay the amount remaining due.

We think the court, under the facts of this case, correctly refused to give the charge requested.

The next question which arises under this assignment is, was the Belt Line insolvent at the time of the execution of said deeds of trust; and if so, did that render said deeds of trust void; and if void, are appellees in a condition to profit thereby?

No court within our knowledge has gone to the extent of holding that when the liability of a corporation is greater than its assets, it has necessarily reached that stage of insolvency that its property becomes trust funds in the hands of its officers, to be administered solely for the benefit of creditors.

The rule is, that when a corporation has ceased to do business, or has done some act thereby incapacitating it for further continuing business, then its property becomes a trust fund in the hands of its directors, for the benefit of creditors. Hardware Company v. Stove Manufacturing Company, 88 Texas, 468; Rogers v. Lumber Company, 11 Texas Civ. App., 108, 33 S. W. Rep., 312; National Bank v. Goolsby, 12 Texas Civ. App., 362, 35 S. W. Rep., 713.

At the time the loan was negotiated to secure which the deed of trust was executed, the Belt line was largely indebted; its liabilities exceeded its assets, but it had not ceased business, and the loan was consummated for the purpose of liquidating its indebtedness in order that it might continue business. It seems to have been made in perfect good faith, as the money borrowed was applied to the indebtedness of the concern, a part of which was paid on appellees' claim against said Belt Line. We are of opinion the evidence fails to show that said directors, when borrowing said money, were not authorized to reasonably expect that the corporation could continue to do business, and fails to show that the Belt Line was insolvent at that time in the manner that its assets became trust funds in the hands of its directors for the benefit of its creditors.

If, however, said corporation was insolvent at that time, so as to render the transaction void or voidable, we are unable to see how it would benefit the appellees. If insolvent, the law requires its property to be administered for the benefit of all its creditors, and in order for appellees to enforce their lien, all creditors would have to be made parties in a proper proceeding for that purpose. Such is not this suit. Fowler v. Bell, 90 Texas, 150; 37 S. W. Rep., 1058.

Appellees contend that N. M. Lee guaranteed the payment of their claim, and is liable therefor, and the court erred in refusing to give the charge requested on this proposition. The charge asked is: "If you believe from the evidence that C. W. Post, for plaintiff, agreed with N. M. Lee to take his personal guarantee and extend the time as requested in said offer to guarantee, and such time was given, you will

find for plaintiffs against said Lee the amount set out in paragraph one of the principal charge.

The guarantee is:

"Sherman, Texas, May 17, 1890.

"Messrs. A. L. Ide & Son, Springfield, Ill., Gentlemen:—

"It is the wish of our directory to delay the final payment on our steam plant until after the engine is tested. Therefore, if you will permit the account to stand open until June 10, 1890, we will on that date remit you in full for amount, less the charge of $113.41 for pipe and fittings, unless the engine and plant fails to do its duty. In that event you will be notified immediately. Now in consideration of the above extension of time, I hereby agree, and will, and do hereby bind myself personally, to pay the said amount due you of $1998.65, promptly on said June 10, 1890.    (Signed)            "N. M. Lee.

"Witness:   O. F. Wyrick."

C. W. Post was the agent of Ide & Son, and he testified that he accepted Lee's personal guarantee to pay this debt, and in consideration of that extended the time and refrained from filing the lien.

This evidence shows a clear contract of guaranty binding Lee for the payment of the debt, and the court should have instructed the jury on this issue.   Johnson v. Bailey, 79 Texas, 516; Wilkins v. Carter, 84 Texas, 438.

For the reasons stated, the judgment is reversed and the cause remanded for another trial.

*Reversed and remanded.*

Application for writ of error dismissed by the Supreme Court for want of jurisdiction.   See Ide v. College Park Belt Line, 90 Texas, 509.