MISSOURI, K. & T. RY. CO. OF TEXAS v. WOOD et al.

(Court of Civil Appeals of Texas. Dallas. Dec. 7, 1912. Rehearing Denied Jan. 4, 1913.)

1. ATTORNEY AND CLIENT (§ 190*)—ACTION ON ASSIGNMENT OF INTEREST — ADMISSIBILITY OF EVIDENCE—CONTRACTS.

In a suit by attorneys upon an assigned interest in a cause of action and judgment, where the court charged that a second explanatory assignment could not be considered as constructive notice to defendant or as giving plaintiffs any rights as against defendant, such second assignment was admissible as tending to prove that the earlier assignment to other attorneys was taken for the benefit of plaintiffs.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 412–417; Dec. Dig. § 190.*]

2. ATTORNEY AND CLIENT (§ 189*)—ASSIGNMENT OF INTEREST — PROVISION AGAINST COMPROMISE WITHOUT CONSENT—VALIDITY.

The provision in a client's assignment to his attorneys of an interest in the cause of action. that neither party shall compromise the claim without the consent of the other does not alone render the assignment invalid, but its binding force depends upon the question of bad faith or fraud as between the assignor and the beneficiary, and is not available to the defendant when sued on the claim after settlement with the client with notice of the attorneys' rights.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 407–411; Dec. Dig. § 189.*]

3. ATTORNEY AND CLIENT (§ 190*)—ACTION ON ASSIGNMENT OF INTEREST—SUFFICIENCY OF EVIDENCE—BENEFICIARIES.

Evidence in attorneys' action on an assigned interest in a cause of action, brought against the defendant in the action after its compromise in favor of the client, held to sustain a finding that a former assignment to other attorneys was for the equal benefit of the plaintiffs.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 412–417; Dec. Dig. § 190.*]

4. ASSIGNMENTS (§ 88*)—ASSIGNMENT OF INTEREST IN RIGHT OF ACTION—CONSTRUCTION AS ABSOLUTE OR AS SECURITY.

A client's assignment reciting his employment of attorneys to represent him, and that "for the purpose of securing the said * * * (attorneys) for services rendered and to be rendered I hereby assign, transfer, and convey * * * one-third my claim in the cause of action," did not create a mere mortgage on the funds to be realized by the action, but evidences a plainly expressed intention to assign a part of the claim.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 135, 136; Dec. Dig. § 88.*]

5. NOTICE (§ 15*)—QUESTION FOR JURY—ACTUAL NOTICE.

Actual notice is a question of fact to be passed upon by the jury.

[Ed. Note.—For other cases, see Notice, Cent. Dig. § 41; Dec. Dig. § 15.*]

6. NOTICE (§ 14*)—"CONSTRUCTIVE NOTICE."

"Constructive notice" is a legal presumption not to be controverted.

[Ed. Note.—For other cases, see Notice, Cent. Dig. §§ 39, 40; Dec. Dig. § 14.*

For other definitions, see Words and Phrases, vol. 2, pp. 1472–1474; vol. 8, p. 7613.]

7. NOTICE (§ 2*)—"ACTUAL NOTICE."

"Actual notice," when proven, is as sufficient as constructive notice, and exists where the party to be affected by it is proved to have actual knowledge of the fact, where the knowledge is brought directly home to him, and whenever the party is put upon inquiry amounting to a duty which would, in the exercise of ordinary diligence and understanding, lead to the knowledge of the requisite fact.

[Ed. Note.—For other cases, see Notice, Cent. Dig. § 2; Dec. Dig. § 2.*

For other definitions, see Words and Phrases, vol. 2, pp. 160–163; vol. 8, p. 7564.]

8. ATTORNEY AND CLIENT (§ 104*)—NOTICE TO ATTORNEY—EFFECT AS NOTICE TO CLIENT.

The knowledge of defendant's attorney as to an assignment by plaintiff to his attorneys of an interest in the cause of action was the knowledge of the defendant.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 92, 93, 1020; Dec. Dig. § 104.*]

9. ATTORNEY AND CLIENT (§ 190*)—ACTION ON ASSIGNED CAUSE OF ACTION—QUESTION FOR JURY—NOTICE TO ADVERSE PARTY.

Evidence in an action by attorneys on their client's assignment of an interest in his cause of action, brought after defendant had compromised with the client through other attorneys, held sufficient to sustain a finding that defendant by ordinary care might have informed itself of such assignment.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 412–417; Dec. Dig. § 190.*]

10. ATTORNEY AND CLIENT (§ 190*)—ACTION ON ASSIGNED CAUSE OF ACTION—INSTRUCTIONS.

In an action on an assignment of an interest in a client's cause of action and judgment, where the jury found that plaintiffs had an interest under a former assignment, of which the defendant had, or by reasonable inquiry might have had, notice, an instruction that, if the client agreed to pay plaintiffs a part of the "recovery," etc., was not objectionable, since it was unlikely that the jury were confused by the use of the term "recovery."

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 412–417; Dec. Dig. § 190.*]

11. ATTORNEY AND CLIENT (§ 190*)—ACTION ON ASSIGNMENT OF INTEREST — PLEADING AND ISSUES.

Where the petition in an action on an assignment of an interest in a client's cause of action and judgment charged the defendant with constructive notice and actual notice, but did not charge that defendant possessed such knowledge that a reasonably prudent person would have known of such interest, an instruction to find for plaintiffs if defendant knew or had such knowledge that a reasonably prudent man would have known of their interest in the cause of action was not objectionable as broadening the issues, since the actual knowledge pleaded was intended to comprehend not only express knowledge, but the possession of facts and circumstances from which notice could be implied.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 412–417; Dec. Dig. § 190.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**12. ATTORNEY AND CLIENT (§ 190\*)—ACTION ON ASSIGNMENT OF INTEREST — INSTRUCTIONS.**

Where the issues were whether attorneys had an interest in a client's assignment of an interest in his cause of action to other attorneys, and whether defendant at the time it settled the case with the client had notice of such interest, the use of the word "employment" in instructing on the question whether plaintiffs had an interest in the assignment from the client to the other attorneys was not misleading.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 412–417; Dec. Dig. § 190.\*]

**13. TRIAL (§ 251\*)—INSTRUCTIONS—PLEADING AND ISSUES.**

Where plaintiffs pleaded that they were employed by a client for an interest in his cause of action or judgment to bring action against defendant, but that other attorneys took the assignment for their sole benefit, a charge to find for defendant, unless after the assignment one of such other attorneys agreed that plaintiffs might come in under the contract with them, as not objectionable as permitting the plaintiffs to recover upon an agreement made outside of the assignment sued upon.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.\*]

**14. ATTORNEY AND CLIENT (§ 189\*)—ASSIGNMENT OF INTEREST — CLIENT'S RIGHT TO COMPROMISE.**

In the absence of a provision against compromise without consent in a client's assignment to his attorneys of an interest in his cause of action, the client may compromise his claim; and whether he may do so after an assignment containing such clause depends upon the facts in the particular case.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 407–411; Dec. Dig. § 189.\*]

**15. ATTORNEY AND CLIENT (§ 190\*)—CLIENT'S ASSIGNMENT OF INTEREST—RIGHT TO COMPROMISE.**

The right of a client who has assigned an interest in his cause of action to his attorneys to compromise his claim without their consent does not preclude such attorneys from recovering from a defendant who adjusted the entire claim with the client, provided defendant had notice of such assignment; nor does such right of the client to compromise authorize other attorneys holding an assignment for the equal benefit of plaintiffs to make a settlement binding upon the plaintiffs.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 412–417; Dec. Dig. § 190.\*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by J. H. Wood and another against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiffs, and defendant appeals. Affirmed.

A. S. Coke and A. H. McKnight, both of Dallas, and Head, Smith, Hare & Head, of Sherman, for appellant. Wolfe, Maxey, Wood & Haven, of Sherman, for appellees.

RASBURY, J. Ari Wilson sued appellant in the district court of Grayson county for personal injuries due to the alleged negligence of the appellant. At the time of filing the suit there was also filed with the clerk of the court an assignment by Wilson, con- veying one-third of his cause of action against appellant to Messrs. J. C. Wall and W. J. Mathis, attorneys. Subsequently, and before the case was tried, appellant compromised the case with Wilson with the knowledge and consent of Messrs. Wall and Mathis, the full amount of the compromise going to Wilson. After the compromise appellees Wood and Haven intervened in the suit, and alleged they owned a half interest in the one-third interest in the cause of action assigned to Wall and Mathis, and that the case was compromised and settled without their knowledge or consent. Upon trial appellees recovered judgment, and the case is here on errors assigned by appellant.

By their plea of intervention appellees, after asserting a cause of action on the part of Wilson against appellant, alleged that Wilson, after receiving his injuries, employed appellees and Wall and Mathis as attorneys to sue appellant to recover damages for his injuries, and that each were to receive as compensation for their services in that behalf an undivided one-twelfth interest in said Wilson's cause of action; that on the ——— day of October, 1910, Wilson conveyed to Wall and Mathis by contract in writing an undivided one-third interest in said cause of action, it being understood and agreed at the time that the contract was for the benefit of appellees, they to have one-half of said one-third, and Wall and Mathis the other one-half; that, while appellees' names were not embodied in the written contract, the appellant had actual notice that appellees were employed and had such interest in Wilson's cause of action; that afterwards, on March 9, 1911, Wilson, for the purpose of carrying out and making more definite his contract with his several attorneys, executed and delivered another written contract, whereby he transferred and assigned to appellees and Wall and Mathis an undivided one-third interest in said cause of action, as well as an undivided one-third interest in any judgment rendered on said claim or any sum of money collected on said cause of action or said judgment, whether by compromise or otherwise, which contract was deposited with and filed by the district clerk on March 13, 1911; that, notwithstanding appellant had actual knowledge of the facts alleged, it compromised and settled said cause of action with said Wilson and said Wall and Mathis. Appellant, besides the general denial and certain special exceptions, admitted the execution of the contract of October, 1910, by Wilson to Wall and Mathis, but denied appellees had any interest therein; admitted it had notice that Wall and Mathis were Wilson's attorneys, and had an interest in his cause of action, but denied notice of the written contract because same, not being acknowledged, was not constructive notice to appellant of its terms or provisions, and denied also either

actual or constructive notice of any interest of appellees in said contract; that, if appellees ever had any interest in said cause of action, the same was owned, held, and controlled by appellees and Wall and Mathis jointly, and, appellant having compromised and settled same with the consent and approval of said Wall and Mathis, appellees were bound by such settlement, and appellees' cause of action, if any, is against their associates Wall and Mathis; further, that on March 13, 1911, appellant made a full and complete settlement with Wilson of his said cause of action, including attorney's fees, without notice, actual or constructive, that appellees had any interest therein, but that, on the contrary, appellant believed at the time of making said settlement that Wall and Mathis were the only ones who had any interest in Wilson's cause of action; that negotiations for adjustment had been carried on for several weeks which was well known to appellees, and that they knew as well that said Wall and Mathis were assuming to act in regard to the interest assigned in said cause of action as attorneys' fees, and appellees acquiesced therein, and made no complaint to appellant, nor notified it that they had any interest therein; that if appellees did have any interest in said fees by their acts and conduct they represented that said Wall and Mathis had full power and authority to act in regard to the settlement of the same; and that appellees were estopped to deny they were concluded by the acts of said Wall and Mathis.

The first contract, which is undated, and unacknowledged, but was filed in the office of the county clerk in attempted compliance with article 6833, R. S. 1911, recited, in effect, that Wilson has employed Wall and Mathis to represent him in the matter of his claim for damages, they to bring suit if necessary, and, in order to secure them for services rendered and to be rendered, Wilson assigns, transfers, and conveys to them one-third of his claim and cause of action against the railway company. The contract is signed by Wilson, Mathis, and Wall. The second contract, which is dated March 9, 1911, is signed by Wilson alone, and properly acknowledged. In substance, it declares that Wilson has employed Mathis, Wall, Wood, and Haven as his attorneys to represent him in the matter of the prosecution of his claim against the railway company, and assigns and sets over to them an undivided one-third interest in his cause of action and in and to any judgment rendered in any court on the same and in and to any sums of money collected on said cause of action or judgment. There was also a provision in the contract that neither party should compromise the claim without the consent of the other.

Upon trial it was agreed between appellant and appellees that the court should instruct the jury that, in the event they found for appellees, their damages should be assessed at $2,000, which agreement the trial judge observed. The court, also, upon request of appellees, instructed the jury that appellant had no notice of the second contract, and could not be charged with notice of the same, but that same could be considered upon other issues in the case.

A great amount of testimony was adduced upon the trial of the case, and it is wholly impracticable to set same out in this opinion, but the testimony, in deference to the verdict of the jury, warrants the following conclusions of fact: That Ari Wilson was injured by appellant; that W. J. Mathis and James P. Haven were employed by him to prosecute his claim against the appellant; that Mathis associated John C. Wall with him in the case, and Haven in like manner associated J. H. Wood, Wilson having employed neither Wall nor Wood; that the first contract signed by Wilson conveying an interest in the judgment to Mathis and Wall alone was for the benefit of Haven and Mathis, and so understood by all the parties thereto, and was subsequently agreed to by Mathis and Haven, after the contract excluding Haven and Wood was delivered in a conference in reference to the matter, at which time, notwithstanding the contract referred to, it was agreed that Mathis and Haven should have the case on equal terms; that after the first contract was executed, and after the conference between Mathis and Haven, Mathis signed Haven's name to the petition then on file in the case, and from which the name of Haven had been omitted when Mathis prepared same, and Haven begun active participation in the suit, and contributed his share of labor to its preparation for trial; that the second contract executed by Wilson was in confirmation of what was intended by the first contract and supplementary thereto; that under both contracts an assignment of a third interest in Wilson's cause of action against appellant and any judgment recovered thereon to Mathis and Haven was intended by all parties interested; that appellant had actual knowledge of the first contract, and knew that Haven and Wood claimed an interest in Wilson's cause of action thereunder; that appellant had no notice of the execution of the second contract, and had no knowledge of appellees' claimed interest in Wilson's cause of action by reason of said second contract; that a month or six weeks before appellant adjusted the claim with Wilson and Mathis and Wall the appellee Haven was in the office of Mr. Head, one of the appellant's attorneys, at which time he was asked if he (Haven) and Judge Wood "represented" Wilson in his suit; that Haven told him they did; that Mr. Head then mentioned that some negotiations were pending in the matter, and he wanted to know if Haven and Wood were in the case; that Mr. Head re-

ceived an amended petition in Wilson's case against the railway company from either Judge Wood or Mr. Haven, which was by him sent to the company's general attorneys, and that in that way he knew that Wood and Haven were attorneys in the case, and that he noticed that the names of all the attorneys were signed to the same; that Mr. Head, appellant's attorney, knew it was an almost universal custom at the Sherman bar that cases like Wilson's were prosecuted on a contingent fee, and that he was attorney for the railroad company; that, after Head's conversation with Haven, Head had a conversation with Wall, and incidentally inquired of him if Wood and Haven were in the case, and that Wall said that the other attorneys wanted their names to the petition, but that he had full authority and control of same, and could do with it whatever he pleased; that Wall claimed to Head that Wood's and Haven's connection with the case was through Harve Thompson, brother-in-law of Wilson, but that his, Wall's, was direct with Wilson; that Head inquired how Haven's name came to be signed to the petition, and learned that it was done by Mathis, and that Haven's name was so signed before Head received from Wood and Haven the amended petition prepared by them in the case; that E. T. Jackson, agent for the railway company, settled Wilson's claim with Wall and Mathis; that Jackson understood that Haven's name was signed to the petition in Wilson's case; that Jackson had a conversation with Wall after he learned Haven's name was signed to the petition, and that Wall told him Haven had no interest in the case; that Jackson learned from Wall, and perhaps Mathis and others, that Haven's name was signed to the petition; that Jackson knew that Haven had prepared an amended petition in the case; that Jackson learned from Wall that Wood and Haven were claiming to be in the case, but that Wall and Mathis claimed to be the actual attorneys; that, when Jackson settled with Wilson at Wilson's home, Wilson and his wife were preparing to go to town to consult Haven about a settlement attempted to be made two days prior thereto, at which time Wilson and his wife understood from Jackson and Mathis it would not be necessary to see Haven, as everything was satisfactory in town, and it was not necessary for them to go there.

[1] By its first assignment of error appellant complains of the refusal of the court to give its special charge No. 20, which instructed the jury that appellees acquired no right against appellant by the contract or assignment dated March 9, 1911, and that the same should not be considered by them in reaching a conclusion in the case. This contract is the one taken by appellees from Ari Wilson, and was the second one taken in reference to attorney's fees, and is the contract the trial judge told the jury appellees were not charged with notice of, but which they might consider on the other issues in the case. We see no error in the admission of this contract under the limitations of the court's charge. The charge literally told the jury they could not consider the same as importing constructive notice to appellant, and that under same appellees acquired no right against appellant. But we do think it was admissible as tending to prove that the original contract was taken for the benefit of appellees, as well as Mathis and Wall, and in confirmation of the claims of appellees in that particular.

[2] Said second contract contains a clause which provides that "neither party hereto shall compromise said claim without the consent of the other." Under its first assignment, appellant asserts that the contract by said clause is rendered void as against public policy, in that it undertakes to deprive the plaintiff (Wilson) of the right to settle or compromise his suit without the consent of his attorneys. An issue of this sort between a litigant and his attorney might become material under certain conditions, and we can conceive instances when it would be inequitable to hold such a provision to be of unvarying force and effect. In this case, however, Wilson did compromise his suit, and no claim is made that appellees are not satisfied with the settlement, or that the amount paid him is insufficient, but, on the contrary, appellees ratify his action in that respect, and rest their right of recovery upon appellant's negligent payment to Wilson of the entire sum, asserting that under their contract with Wilson, with which appellant was familiar, one-sixth of the amount should have been paid to or retained for them. For that reason, we think the point immaterial. Nor do we think the presence of such a clause in the contract will alone render the same invalid for all purposes. On the contrary, it seems to us that the binding force of such a clause necessarily depends in every instance upon the facts developed under a claim of bad faith, fraud, or similar claim in an issue cast between the assignor in the contract and the beneficiary thereunder. Article 6833, R. S. 1911; Railway Co. v. Miller, 21 Tex. Civ. App. 609, 53 S. W. 709. The Miller Case is dissimilar in facts to the case at bar, Miller in effect being charged with having made a settlement under a contract secured by fraud, assigning him an interest in a cause of action after his power to settle had been revoked, but the rule announced is applicable, since it is held in that case that in such cases in the absence of fraud, or other available defense, the power to settle cannot be revoked. By analogy the clause attacked in this case cannot be held to invalidate the contract by its mere presence there, nor the protection afforded by it destroyed in the absence of pleading and proof of bad faith on the part of the beneficiary.

The third and fourth propositions under the first assignment of error assert that the second contract was without consideration and inadmissible in testimony and of no force and effect, because the first contract was prior in right, and undertook to convey the same subject-matter. As we have indicated at another place in this opinion, the evidence is sufficient to sustain the findings of the jury that the second contract was but supplementary to the first, and executed to evidence the intention of Wilson to convey a portion of his cause of action to Haven which, without his fault, had not been accomplished by the first contract. These being the facts, no question of priority or sufficiency of consideration arises.

[3] Appellant's second assignment of error complains of the refusal of the court to instruct a verdict for appellant on the ground that the testimony was insufficient. The testimony as developed was sufficient to take the case to the jury, and the finding of the jury that the first contract or assignment executed by Wilson and wife to Mathis and Wall was for the equal benefit of appellees was sufficiently supported by the facts. That assignment was definite, direct, and in express terms showed a transfer of a part of Wilson's cause of action against appellant to Mathis and Wall, and it will not be disputed in a controversy between Mathis and Wall and appellees alone was ample to sustain the finding of the jury that it was taken as well for the benefit and use of appellees, though their names were not mentioned therein. Whether the evidence was sufficient to take the case to the jury as against appellant is discussed in another part of this opinion.

[4] The second proposition under the second assignment is that the first contract or assignment is but a mortgage or lien to secure payment of a fee, and under it the beneficiaries only had the right to proceed against the fund in case appellant settled with Wilson. The contract or assignment, after reciting Wilson's injury by appellant and his employment of his attorneys to represent him in his contemplated proceedings against appellant, recites: "For the purpose of securing the said * * * (attorneys) for services rendered and to be rendered, I hereby assign, transfer and convey * * * one-third of my claim and cause of action." The only process of reasoning by which the assignment can be held to be a mortgage is the use of the words, "for the purpose of securing the said (attorneys) for services rendered, etc., I hereby assign, transfer and convey," etc. We think it would be a strained construction, under the circumstances surrounding the execution of this contract, to hold it a mortgage. The only words which could be held to create a mortgage are insufficient in themselves for that purpose and doubly so in the presence of those by which the grantor transfers, assigns, and conveys an interest in the claim. No words are used to indicate an intention to mortgage, while the instrument as a whole evidences a plainly expressed intention to assign a part of the claim.

Nor do we think the third proposition under the second assignment which asserts that the contract does not effect a transfer of interest in præsenti correct. The words, "I agree to give and hereby assign * * * one-third of whatever may be recovered in said suit," was held by our Supreme Court to be "all that was required to make an assignment as contradistinguished from a mere agreement to pay so much as a contingent fee." Railway Co. v. Ginther, 96 Tex. 299, 72 S. W. 167, and cases cited.

By its first proposition under its third assignment of error, appellant asserts that the court erred in refusing to instruct the jury, as requested by it, that, before appellees could recover, it must appear that appellees had an assignment of a definite and specific interest in the cause of action, and had given notice to appellant of such interest. The appellees' theory of the case, as pleaded, was that while appellant did not have constructive notice of either of the contracts, the first contract failing to import notice because unacknowledged and the second failing to do so because of the instructions of the court, yet appellant actually knew of the contract or was in the possession of such facts as would put it upon inquiry which if pursued would disclose the interest of appellees. Hence it will be seen that this assignment challenges the sufficiency of the evidence to show an assignment and notice of the same to appellant. We have heretofore determined that in our opinion the testimony is sufficient to sustain the finding of the jury that the assignment made to Mathis and Wall was intended, as well, for the use and benefit of appellees, and that they did own an equal interest therein with said Mathis and Wall.

[5-7] In discussing the question of notice to appellant of the interest of appellees in Wilson's cause of action and the assignment thereof to Mathis and Wall, it may be admitted that the record shows no constructive notice to appellant of the same, but it may also be said that actual notice when proven is as sufficient as constructive notice, the difference being that constructive notice is a legal presumption not to be controverted (article 6833, R. S. 1911; Railway Co. v. Vaughan, 16 Tex. Civ. App. 403, 40 S. W. 1066), while actual notice is a question of fact to be passed upon by the jury. "Actual notice is said to exist where the party to be affected by it is proved to have had actual knowledge of the fact, where the knowledge is brought directly home to him by the evidence," and the general doctrine of actual notice is also said to be "that whatever puts

a party upon an inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding." Wethered v. Boon, 17 Tex. 150. This rule is maintained unimpaired by the later authorities. Electric Belt Line v. Ide & Son, 15 Tex. Civ. App. 277, 40 S. W. 64, and cases cited. This court in the case last cited states the rule to be "that actual notice exists when knowledge is actually brought home to the party to be affected by it, or where he might by the use of reasonable diligence have informed himself of the existence of certain facts. Any fact or circumstance that is sufficient to put a prudent man upon inquiry and is of such a character that he might ascertain the fact by the exercise of proper diligence will be regarded as notice. Notice is a question of fact, to be determined by the jury from all the facts and circumstances in evidence before them."

[8, 9] The rule being as we have stated, and it being the province of the jury to determine whether the facts show actual notice, can we say there was no evidence from which the jury could find that the appellant might have by the exercise of ordinary or reasonable diligence informed itself of appellees' interest or that the proven facts were insufficient to put a prudent person upon inquiry which, if pursued, would disclose same? Quite awhile before the compromise was effected, Mr. Head, one of appellant's attorneys in the case, inquired of appellee Haven whether he was in the case, and was told by Haven that he was. Mr. Head stated that he asked because some negotiations were pending in relation to the suit, the character of which is not disclosed by the evidence, and appears not to have been volunteered by Mr. Head. By reason of this information, Mr. Head at least knew that appellees were attorneys in the case. Mr. Head also testified that the custom in Sherman was all but universal that such cases as Wilson's were taken upon a contingency. Subsequently Mr. Wall, one of Wilson's attorneys, denied that appellees had any interest in the cause of action, and the inference is clearly to be drawn from his testimony that the attorneys were in dispute about their interests, both sets claiming an interest in the same, and Wall, at least, denying any interest on the part of appellees. Some days before the case was compromised, appellant's attorneys received from appellees certain amended pleading in the case with appellees' names signed thereto as counsel, the notice coming through the mail, and, although appellant's attorneys testified that an examination of the notation on the docket in the clerk's office evidencing the transfer by Wilson showed no transfer to appellees, it did show that Wil-

son was compensating his attorneys by an interest in the judgment, and it seems to us that these facts were sufficient to have reasonably excited his suspicion and led him as attorney for appellant to inquire directly of appellees or Wilson concerning their interest in the matter. Mr. Head's knowledge of these facts was the knowledge of appellant. Riordan v. Britton, 69 Tex. 198, 7 S. W. 50, 5 Am. St. Rep. 37; Van Hook v. Walton, 28 Tex. 72; Catlin v. Bennatt, 47 Tex. 171. We think, however, aside from any notice chargeable to Mr. Head, that there was disclosed to the appellant's claim agent Jackson facts sufficient to have reasonably excited his suspicions and led him to inquiry, which, if pursued, would have enabled him to ascertain the facts in the matter as found by the jury. Mr. Jackson was a claim agent whose duty presumably at least was to adjust claims like the one asserted by Wilson. He had a copy of the petition in the case, and knew that appellees' names were signed to the same as counsel for Wilson, and because of that fact inquired of Mr. Wall whether appellees had any interest in the case, and was told by Mr. Wall that he did not. This witness evidently had his suspicions aroused since he also testified that he knew that appellees' names were signed to the petition at the courthouse after the original petition was filed. He also testified that he knew that Haven had filed an amended pleading, having secured the information from either Mr. Wall or Mr. Mathis or probably both, and adds that they did not seem to like it. Mrs. Wilson also testified that she understood from this witness on the day settlement was made that it was unnecessary for Mrs. Wilson to see Haven (as she desired to do), as everything was satisfactory. Considering the capacity in which this witness was representing appellant, his investigation of the pleading in the case, his inquiry of the other attorneys in the case as to the interest, if any, of appellees, the evident hostility between counsel for Wilson, and the further fact that Jackson testified that he never in his life talked to Haven about the case, when he might have easily done so, but, instead, abandoned the inquiry, and relied upon Mr. Wall's statement, and accepted his version of the matter, evidences a failure to exercise ordinary diligence to ascertain the requisite facts in the controversy, and, at all events, was sufficient to carry the case to the jury.

[10] The fourth assignment of error complains of that portion of the court's charge wherein the jury is told that appellees would be entitled to judgment if they believed that Wilson or some one authorized to act for him employed, and agreed with Haven to pay him as compensation for his services one-third in the "recovery" in said cause. Whatever may be said generally for or

against the use of the word "recovery" in the charge in lieu of the more descriptive words "interest" or "assignment," we nevertheless think it harmless in this case. We have already indicated that, as between the several attorneys in the case, the finding of the jury that appellees had an equal interest in the first contract or assignment, because taken for their use and benefit is supported by the evidence, and have also indicated that the finding of the jury that the appellant had actual notice of such right or was at least in the possession of such facts as would put a prudent man upon inquiry, which, if pursued, would disclose same, is also supported by the evidence and, having so found the appellees' interest would be in the recovery for the contract which the jury finds appellant was charged with actual knowledge of, does in terms give appellees an interest in the recovery, whether by suit or compromise. Besides, it seems to us that the complaint is hypercritical, since it is unlikely the jury were confused by the use of the term recovery, but did in fact understand the real issue.

[11] By its second proposition under the fourth assignment of error, appellant contends that the trial court broadened the issues raised by the pleading when he told the jury to find for the appellees if they believed that appellant knew, or was possessed of such knowledge as that a reasonably prudent man would have known, that appellees had an interest in appellant's cause of action, etc. The point made is that, while appellees' pleading charged appellant with constructive and actual knowledge, it nowhere alleged that appellant was in the possession of such knowledge as that a reasonably prudent person would have known of appellees' interest. In Electric Belt Line v. Ide & Son, supra, this court in discussing actual notice, in addition to what has already been quoted, say: "They (meaning the facts and circumstances) must be such as to put a reasonably prudent man upon inquiry and of such a character as to lead to the discovery of the main fact by proper diligence in pursuing the inquiry." Under the rule announced in the above case it is clear to us that it was not intended that actual knowledge should comprehend alone express knowledge of the facts which would put one upon notice, but comprehends as well the right to prove under allegations of actual knowledge that the party sought to be charged was in the possession of facts and circumstances from which notice could be implied.

[12] Appellant's third proposition under the fourth assignment of error complains of the use of the word "employment" by the trial judge, when instructing the jury on the question of whether or not appellees had an interest in the assignment from Wilson to Mathis and Wall. The claim is made that the use of such term misled the jury, since,

under the charge, the jury was permitted to find for appellees if "employed" by Wilson, while the issue was whether or not appellees had an interest in a part of the cause of action. While the use of the term "employed" may be said to be incorrect, since an interest in the judgment was the issue, yet we are persuaded that the jury understood the issue and were not misled thereby to appellant's damage. We think so because there were but two issues in the case, one being whether appellees had an interest in the assignment made by Wilson to Mathis and Wall and the other whether appellees had notice thereof at the time it settled the case with Wilson. It is clear from the court's charge as a whole that the appellees' right to recover was made to depend upon a satisfactory showing in that respect, and we cannot believe that the conclusion of the jury was based upon any other theory than that the first contract was for the use and benefit of appellees, as well as Wall and Mathis, and that the jury, after so concluding, found as a further fact that appellant had actual notice of the same and did not render the verdict upon employment other than the contract, which by the pleading and evidence was made the very basis of the suit.

[13] Nor do we think the fourth proposition under the fourth assignment, which asserts that the charge permitted appellees to recover upon a theory not plead, is correct. As we understand the pleading, the claim was made that appellees were employed by Wilson after his accident to prosecute his claim for damages against appellant upon the terms set out in the first contract, but that the other attorneys took the contract for their sole benefit in an attempt to exclude appellees, notwithstanding Wilson intended same for the use and benefit of appellees. That portion of the charge complained of is where the court tells the jury to find for defendant, unless they believe that, after the first contract was made, Mathis agreed that appellees should come in under the contract equally with Mathis and Wall, the point being that that portion of the charge permits appellees to recover upon an agreement made outside of the contracts sued upon, and upon which appellees had based their right to recover. It occurs to us that the most that can be said of this portion of the charge is that the jury is told that if it believes that Wilson intended to employ appellees, but that notwithstanding Mathis and Wall took the contract alone for themselves, but after conference and negotiations with appellees became convinced that it was Wilson's intention and purpose when he executed the contract that it should be for the benefit of appellees and acquiesced in what appellees claimed had always been the agreement and that appellant had actual notice of the same, then the jury should find for the appellees. It was so claimed in the pleading and developed by the testimony.

The first proposition under the fifth and sixth assignments of error complains that there was no basis in the pleadings for those parts of the charge submitting to the jury whether appellant was in the possession of such knowledge of appellees' alleged interest in the cause of action as that a reasonably prudent man would have known the same. At another point in this opinion we have indicated our views of the question of what is comprehended legally in the term "actual notice," which renders further discussion of the proposition unnecessary.

[14, 15] Appellant's tenth assignment of error complains of the refusal of the court to instruct the jury that any settlement of the case made by Mathis and Wall and Wilson would bind the appellees. As we have indicated in another part of this opinion, it depends upon the facts in the particular case as to whether the assignor in such contracts may settle and compromise their claims where there is a clause which provides he shall not do so without the consent of his attorney. In the absence of such provision, we know nothing that inhibits the assignor from compromising his claim. Such right, however, does not preclude the assignee from recovering from the one so adjusting the claim that portion of the claim transferred to the assignee, provided notice of the assignment is shown. But we do not think that the rule that permits the assignor to settle his claim and compels his assignee to take his portion of the amount derived from such settlement would authorize appellees' co-counsel in this case to make the agreement in the case that they did and bind appellees thereby.

We have not reviewed separately every assignment of error of appellant, but nearly so, and those that we have not reviewed separately either raise questions already discussed or are rendered unnecessary of discussion because of our conclusions on other points that involved same.

Finding no substantial error in the record, the judgment of the trial court is affirmed.