## WOLFE v. STATE INV. CO. et al.

### No. 10188.

Court of Civil Appeals of Texas. Galveston.
May 19, 1936.

Rehearing Denied June 11, 1936.

A. T. Carleton, of Houston, for plaintiff in error.

Morris D. Meyer, of Houston, for L. D. Meyer and others.

Blanchard & Woodul, and Walter F. Woodul, all of Houston, for Walter Woodul and others.

LANE, Justice.

The State Investment Company, a corporation, was on the 1st day of November, 1926, the owner of 77 acres of land situated near the city of Houston, Tex., and on or about said date had the same subdivided into lots and blocks and had a map of such subdivision made and designated the same as Wellesley Estates.

That thereafter, in order to dispose of the various tracts in said Wellesley Estates, the State Investment Company, acting by its president, entered into a contract, on or about the 1st day of November, 1926, with the defendant company, E. J. Burke Company, now the Fidelity Home Investment Company, under the terms of which contract the said Burke Company was to be the exclusive sales agents of said property.

I. J. Wolfe having read in the Houston Chronicle an advertisement as to Wellesley Estates, caused to be published by the State Investment Company, describing the improvements being made and to be made in such addition, did on the 18th day of January, 1927, enter into a written contract with A. C. Bayless, president of the State Investment Company, for the purchase of lots 17 to 22, inclusive, of said Wellesley Estates. Wolfe, on the day the contract was entered into, paid to the State Investment Company $200 in cash, and thereafter promptly paid to said company's agent monthly installments as provided in the contract, beginning with the payment due February 18, 1927, and continuing until all such monthly installments were paid up to and including the one due on September 18, 1930. The company having failed to make the improvements contemplated and as advertised, Wolfe discontinued the payment of the monthly installments called for in the contract, but tendered such payments conditioned that the company would perform its part of the contract. The company failed from the date of such tender to the 18th day of February, 1932, to make the said improvements contemplated as advertised, and Wolfe declared his contract rescinded and filed this suit against State Investment Company, Fidelity Home Investment Company, a corporation, Morris D. Meyer, trustee, and A. C. Bayless, Walter F. Woodul, F. J. Matzinger, Steve Kelton, G. L. Mims, J. H. Rafferty, Leopold L. Meyer, M. L. Brenner, E. B. Arnold, Penn Retting, Marcus Meyer, and A. J. Smith, to recover the sum of $1,756.17 which he alleges he paid out in his effort to perform his part of his contract with the State Investment Company.

The suit as against the State Investment Company was for a recovery of the amount of the money paid to it by plaintiff on the contract of sale of lots 17 to 22 above mentioned. The suit as against the Fidelity Home Investment Company (successors to E. J. Burke Company) was for a recovery of any money collected by it as agent for the State Investment Company, and that against Morris D. Meyer, trustee, for judgment to have the conveyance to him by himself as trustee, under foreclosure sale of the property belonging to the State Investment Company, set aside and that the claim of the plaintiff be established as a first and superior lien on such property to the deed of trust given to Morris D. Meyer, trustee, and that against the remaining defendants, they being certain officers and directors of the State Investment Company, individually and jointly for a recovery of the amount of the money paid by plaintiff to the State Investment Company on the aforesaid contract with 6 per cent. interest thereon, alleging that they failed to attend to the ordinary and customary business of the corporation and thereby allowed the money paid by plaintiff to be converted to the use of certain officers of the corporation.

The suit as against defendants Penn Rettig, Marcus Meyer, and A. J. Smith was

dismissed by plaintiff, therefore no further mention of them will be hereinafter made.

Defendant A. C. Bayless made no answer.

All other defendants answered by a general demurrer and general denial, except Fidelity Home Investment Company, which latter company admitted that it had on hand of the funds of the State Investment Company the sum of $277.50, which it held subject to the orders of the court.

The cause was submitted to the court without a jury. At the close of the evidence, the court rendered judgment reciting:

"The court is of the opinion, under the pleadings and the evidence, that plaintiff is entitled to a judgment against the State Investment Company for the sum of One Thousand Eight Hundred and Ninety-Three and 13/100 ($1,893.13) Dollars, and the Fidelity Home Investment Company having by answer admitted it held Two Hundred Seventy-Seven and 50/100 Dollars ($277.50) for the benefit of the parties to this suit, whoever might be entitled thereto, and offered in its pleadings to pay said sum to whomever the court found entitled thereto, and the court being of the opinion that the plaintiff is entitled to recover said sum of Two Hundred Seventy-Seven and 50/100 ($277.50) Dollars from said Fidelity Home Investment Company, and the court being of the opinion, under the pleadings and the evidence, that plaintiff should not recover from the other defendants;

"It is therefore ordered, adjudged and decreed that the plaintiff, I. J. Wolfe, having in open court dismissed his cause of action as against the defendants, Penn Rettig, Marcus Meyer and A. J. Smith, take nothing as against such defendants, and that they go hence without day and recover their costs as against plaintiff.

"It is further ordered, adjudged and decreed that the plaintiff, I. J. Wolfe, do have and recover of and against the State Investment Company the sum of One Thousand Eight Hundred Ninety-three and 13/100 Dollars ($1,893.13) with interest from this date at the rate of six per cent per annum until paid, and for all costs of court in this behalf expended, for all of which let execution issue.

"It is further ordered, adjudged and decreed that the plaintiff, I. J. Wolfe, do have and recover of and from the defendant, Fidelity Home Investment Company, the sum of Two Hundred Seventy-seven and 50/100 Dollars ($277.50) together with interest from this date until paid at the rate of six per cent per annum, for all of which let execution issue.

"It is further ordered, adjudged and decreed that the plaintiff, I. J. Wolfe, take nothing by reason of his said suit against the defendants A. C. Bayless, Walter F. Woodul, F. J. Matzinger, Steve Kelton, G. L. Mims, J. H. Rafferty, Leopold L. Meyer, M. L. Brenner, E. B. Arnold and Morris D. Meyer, Trustee, and that each of said named defendants do have and recover of and from the plaintiff, I. J. Wolfe, all costs of court in this behalf expended, for all of which let execution issue.

"It is further ordered, adjudged and decreed that such sum as the plaintiff, I. J. Wolfe, may collect from the Fidelity Home Investment Company, up to the full amount herein awarded against that company, shall be credited against the amount of the recovery allowed the plaintiff, I. J. Wolfe, against the State Investment Company."

From so much of the judgment as was adverse to him, plaintiff has appealed.

At the request of the plaintiff, the court filed the following findings of fact and conclusions of law upon which the judgment was rendered:

"1. I find that the defendant, State Investment Company, was duly incorporated under the laws of the State of Texas, with a capital stock of Fifty Thousand ($50,000.00) Dollars fully paid in and which payment was made in cash and that said company was formed for the purpose, among other things, to 'purchase, sell and subdivide real property in towns, cities and villages and their suburbs not extending more than two (2) miles beyond their limits, and to accumulate and lend money for that purpose', etc., as shown by the charter filed in the office of the Secretary of State of the State of Texas on the 7th day of April, 1926.

"2. I find that the State Investment Company purchased from A. C. Bayless a tract of land out of the A. C. Reynolds Survey in Harris County, Texas, approximately seventy-seven acres and that said company had the east one-half of said property surveyed and platted into lots and blocks by Southern Engineering Company on November 1st, 1926, and that said property was referred to as Wellesley Estates. That J.

H. Rafferty was the head of said company and that said plat was never filed for record.

"3. I find that A. C. Bayless, President of State Investment Company, entered into a contract with E. J. Burke Company on or about November 1st, 1926, under authority of a resolution of Board of Directors of State Inv. Co. authorizing the E. J. Burke Company as exclusive sales agents to sell Wellesley Estates by lots and blocks according to the map of said addition. I find that the E. J. Burke Company later became known as Fidelity Home Investment Company.

"4. I find that said E. J. Burke Company, acting on this contract, did thereafter advertise for sale lots in Wellesley Estates in The Houston Chronicle, a newspaper published in Harris County, Texas, in the Sunday issue of The Chronicle, dated November 21, 1926, by a one-sheet ad showing a map of Wellesley Estates with the lots and blocks and streets and in reference to its location as to the surrounding additions; which said advertisement was published by and in behalf of E. J. Burke Company and that some of the directors of State Investment Company learned of this advertisement after seeing the same in the papers and that others had not seen such an ad.

"5. I find that the plaintiff was influenced by such advertisements in the newspaper to enter into a contract with the State Investment Company for the purchase of Lots 17 to 22, inclusive, of Block One (1), Wellesley Estates; which said contract of purchase was duly signed by A. C. Bayless, President of State Investment Company, and by Horace A. Kelley, the then Secretary of said Company, and attested with the seal of the Corporation; and, further, that said contract was duly signed by the plaintiff and that said contract is dated January 18th, 1927, and provided for the payment of Three Thousand ($3,000.00) Dollars, of which Two Hundred ($200.00) Dollars was paid in cash to E. J. Burke Company for the State Investment Company and the balance payable at the rate of Twenty-eight ($28.00) Dollars per month, the first installment falling due on the 19th day of February, 1927, and which payments were to be made to E. J. Burke Company for the State Investment Company.

"6. I find that the plaintiff paid the $200.00 cash, as provided in said contract, and thereafter paid on said contract each month for a period of time from February 19, 1927, up to and including September 18, 1930, and that the sum of Fourteen Hundred Thirty Two ($1432.00) Dollars was paid on said contract.

"7. I find that the said contract provided that the Company should:

"1st. 'Within thirty days from the date of said contract, grade and shell all streets with eight inch shell in front of the property therein contracted to be sold;'

"2nd. 'To lay water lines on rear five foot easement of said property from which water may be obtained';

"3rd. 'To cause electric lights to be available';

"4th. 'To lay or cause to be laid gas main to said addition so that gas will be available';
and that said improvements so promised to be made were controlling inducements for plaintiff to enter the contract.

"I find that none of the improvements as above stipulated have ever been made on said property, and that from and after the time the company ceased its efforts to sell said property by lots, that it never intended to make any of such improvements.

"8. That on or about September 12, 1930, plaintiff took up with Leopold L. Meyer, the then president of State Investment Company, the matter of his contract with said company and with Morris D. Meyer, attorney for the company; and that plaintiff indicated that he intended to carry out punctually the terms of his contract but that said Leopold L. Meyer declined to accept any payments and that A. T. Carleton, attorney for the plaintiff, tendered future payments by depositing monthly the sum of $28.00 in the State National Bank under the name of A. T. Carleton, Trustee, and which deposit was subject to the control of the said A. T. Carleton, Trustee, and not to State Investment Company; that said deposits were made from October 18, 1930, up to and including February 18, 1932, and that the said Carleton, of his own accord and without request from said State Investment Company, mailed a copy of said deposit slip to Leopold L. Meyer and Morris D. Meyer.

"9. I find that no adjustment of any kind was made by the State Investment Company with the plaintiff; that he re-

scinded the contract after February 18, 1932.

"I find that the plaintiff had paid on said contract to the State Investment Company through its agents, the E. J. Burke Company, and afterwards the Fidelity Home Investment Company, the sum of $1432.00, for which he has not received anything.

"10. I find that sales were made by E. J. Burke Company to three purchasers and that the said E. J. Burke Company, and later the Fidelity Home Investment Company, out of all collections made on all contracts, paid to State Investment Company the following sums evidenced by the following checks; that the said checks were endorsed 'State Investment Company, by A. C. Bayless, President', which checks of the said E. J. Burke Company, drawn on the First National Bank of Houston, were as follows:

"(a) One for $1200.00, dated January 31, 1927;

"(b) One for $1319.04, dated December 5, 1927;

and that checks were issued by Fidelity Home Investment Company as follows:

"(a) One for $828.00, drawn on the First National Bank, dated January 9, 1929;

"(b) One for the sum of $322.00, drawn on the Public National Bank of Houston, Texas, dated October 24, 1929.

"11. I find that, as a matter of fact, some of the directors had actual knowledge of the fact that A. C. Bayless, acting for State Investment Company, had entered into a contract with E. J. Burke Company for the sale of Wellesley Estates by lots and blocks.

"12. I find that Fidelity Home Investment Company has a balance on hand collected from remittances made by purchasers of lots, of Two Hundred Seventy-Seven and 50/100 ($277.50) Dollars, appearing as a credit to State Investment Company and that the plaintiff is entitled to said sum.

"13. I find that the officers and directors of the company were the following at the times below specified:

"Officers: A. C. Bayless, President, from April 7, 1926, to January 3, 1930; Horace A. Kelley, Treasurer, from April 7, 1926, to April 8, 1927; Walter F. Woodul, Sec'y. & Treas. from April 18, 1927, to January 3, 1930; J. H. Rafferty,

Sec'y. & Treas. from January 3, 1930, to date; F. J. Matzinger, Vice-President from May 5, 1927, to date; Leopold L. Meyer, President, from January 3, 1930, to date.

"Directors: F. J. Matzinger from May 5, 1927, to date; A. C. Bayless, from April 7, 1926, to date; Walter F. Woodul from April 18, 1927, to January 3, 1930; G. L. Mims, from 1926 to date; Steve Kelton from 1926 to date; E. B. Arnold from October 5, 1927, to date; J. H. Rafferty, from October 5, 1927—January 3, 1930, to date; M. L. Brenner, October 5, 1927, to date; Leopold L. Meyer, from January 3, 1930, to date.

"14. I find no record of the Minutes of the corporation from April 7, 1926, to May 17, 1927, and that the Minutes of the meetings held from May 17, 1927, to October 5, 1927, were dictated by Walter F. Woodul, Secretary of the Company, to Mr. A. C. Bayless' stenographer and signed by Walter F. Woodul, with the understanding that she would paste the minutes into the minute book and that while there was a minute book, the Minutes were not pasted in the Minute Book presented.

"15. I find there are no Minutes of any meetings of the Board of Directors of State Investment Company from May 17, 1928, to January 3, 1930.

"16. I find that the by-laws of the corporation prepared by the Secretary, Walter F. Woodul, which were adopted by the corporation October 5, 1927, provided that there should be a president, vice-president, secretary and treasurer, and that the secretary and treasurer might be the same person. That said by-laws provided that the secretary should be the custodian of all records. That the treasurer should be the custodian of all funds of the company, and that he shall keep a full and accurate account of receipts and disbursements of the company in books belonging to the company, and a report of finances of the company to be made by the treasurer at each annual meeting, and that all funds to be deposited in a bank and checks drawn only upon his signature and the president's signature.

"I find that while the by-laws provided that bond should be given by the treasurer, that no bond was ever given by the treasurer of the State Investment Company.

"17. I find that the State Investment Company possessed no assets other than the 77 acres of land in the A. C. Reynolds Survey, and that such sums as were received by it from E. J. Burke Company were used for the payment of taxes and interest and that at the meetings held by the Board, the members were informed of the amount of money on hand, of the amount required to meet taxes and interest, and that assessments were levied against the stockholders for that purpose, but that no actual record was kept showing receipts of money from E. J. Burke Company and Fidelity Home Investment Company; and that while no permanent written report was made by the president or treasurer, that verbal reports with regard to the financial condition of the company were made from time to time.

"18. I find that during the time that A. C. Bayless was president of the corporation, that all matters pertaining to the business of the corporation were entrusted to him and that from time to time the matters concerning the corporation were discussed with the board of directors and that the actions of the president were approved. I further find that all of the directors were satisfied with the manner in which the business of the corporation was conducted and that no director ever knew or heard of any irregularity with regard to conducting the affairs of this company. I find, further, that the same status existed with regard to the period of time during which Leopold L. Meyer was the President of the company; and that the said Leopold L. Meyer was assisted by his brother, Morris Meyer, who was the attorney for said company.

"19. I find that E. B. Arnold advanced $2,000.00 to the corporation; that M. L. Brenner advanced $2,000.00 to the corporation, and that A. C. Bayless advanced $2,000.00 to the corporation, for the purpose of taking up vendor-lien notes owed by the company and which were due and that at a meeting of the board of directors held May 17, 1928, a resolution was passed authorizing the company to execute the company notes for the amounts above, to said three directors, as evidence of the amounts so advanced, payment for which was to be made out of the funds of the corporation; and that at said meeting the following directors were present: J. H. Rafferty, E. B. Arnold, A. C. Bayless, M. L. Brenner, and Walter F. Woodul.

"20. I find that out of a loan of Seventy Thousand ($70,000.00) Dollars made by State Investment Company on February 26, 1930, and which loan was made to said company by American National Insurance Company of Galveston, Texas, the sum of One Thousand ($1,000.00) Dollars was paid to E. B. Arnold, and the sum of One Thousand ($1,000.00) was paid to M. L. Brenner, to be applied on the two-thousand-dollar advances made May 17, 1928, and that no interest has ever been paid on the notes held by Arnold, Brenner and Bayless.

"21. I find that the proceeds of the $70,000.00 loan were used for the purpose of paying a first lien against the property, for $43,306.70; a second lien of $11,573.50; of paying American Trust Company $2921.92, San Jacinto Trust Company $2067.11; of paying taxes approximating $2800.00 and of paying expenses connected with the negotiation of the loan; and of the balance of $1186.11, the sum of $1,000.00 was paid to Mrs. A. G. Fitts, a holder of one of the contracts of purchase.

"22. I find that at the said meetings of the board of directors when question of refinancing indebtedness of the company by making loan of the $70,000.00 from the American National Insurance Company was discussed who had purchased the lots in Wellesley Estates, amongst which was plaintiff, was discussed.

"23. I find that the deed of trust dated the 19th day of May, 1928, given by the State Investment Company to the Houston Investment Company, recorded in Vol. ――――, page ――――, of the Deed of Trust Records of Harris County, to secure a note of $40,000.00, provided for releases of the lots in Wellesley Estates, as specified in the contract made the same date between the Houston Investment Company and the State Investment Company. That said contract set out the various sums necessary to release the lien of the $40,000.00 as to the lots, and that said contract provided as to the lots sold to plaintiff that said lots would be released from the lien of such deed of trust upon the payment of $200.00 for each lot; that attached to said contract is a map of Wellesley Estates and a list of the lots, and agreement as to the contract signed

by the endorsers of the note. That said $40,000.00 note was endorsed by A. C. Bayless, Walter F. Woodul, Steve Kelton, M. L. Brenner, F. J. Matzinger, E. B. Arnold, and J. H. Rafferty.

"24. I find that no money was paid for the partial release of any of these lots to the Houston Investment Company.

"25. I find that on the 17th day of February, 1930, that the State Investment Company, acting through its duly authorized officers, under resolution of the board of directors of the State Investment Company, in order to refinance the indebtedness of the company, executed a deed of trust to the American National Insurance Company of Galveston, Texas, to secure the payment of a note for $70,000.00, and that such deed of trust did not provide for any partial releases, as was provided in the deed of trust to the Houston Investment Company.

"26. I find that it was thought by the directors of State Investment Company that a quick turn of the property could be made and that the plan of selling the property by lots and blocks was abandoned on or about May 1, 1927.

"27. I find that under authority of a resolution the board of directors of State Investment Company at a meeting held December 20, 1930, the officers of the company were empowered and did execute a deed of trust dated December 31, 1930, recorded in Vol. 533, page 393, of the Deed of Trust Records of Harris County, Texas, to H. A. Phillips, Trustee, for Morris D. Meyer, Trustee, to secure a note payable to Morris D. Meyer, Trustee, for $1200.00, and which sum of $1200.00 was advanced to the company by certain of its stockholders and directors and used for the purpose of paying taxes due.

"28. I further find that under authority of a resolution of the board of directors of State Investment Company dated January 20, 1931, that the officers of the company were authorized and did execute a deed of trust dated February 3, 1931, recorded in Vol. 546, page 320, Deed of Trust Records, to H. A. Phillips, Trustee, for Morris D. Meyer, Trustee, to secure a note payable to Morris D. Meyer, Trustee, for the sum of $3500.00; and that said note was given for the purpose of taking up the $1200 note referred to above and to pay the semi-annual interest due to American National Insurance Company and which said sum of $3500.00 was advanced by certain directors and stockholders of State Investment Company.

"29. I further find that the deed of trust given to secure the note of $3500.00 was foreclosed and that the entire property of State Investment Company, subject to the lien of the American National Insurance Company, was sold to Morris Meyer, Trustee, by a deed from H. A. Phillips, Trustee, dated October 2, 1931, for the benefit of the beneficiaries under said deed of trust, being the stockholders and directors who advanced such money; said deed being recorded in Vol. 882, page 413, of the Deed Records of Harris County.

"30. I find that no actual notice was given to the plaintiff that the above deed of trust was executed, encumbering all of its assets, nor was any notice given as to the foreclosure sale of said property under which the said Morris Meyer, Trustee, purchased the property for the benefit of the stockholders and directors; but that both deeds of trust and the deed were recorded in the proper records of Harris County, Texas.

"31. I find that the corporation failed to pay its franchise tax and that its charter was forfeited by the Secretary of State on the 2nd day of July, 1932, and thereafter ceased business as a going concern.

"32. I find that the affairs of the State Investment Company were not put in the hands of a Receiver, nor its charter dissolved by any legal procedure.

"33. I find that during the entire time that the State Investment Company was functioning, no officer and no director of said corporation received any compensation for services rendered in conducting the affairs of the corporation.

"34. I further find that no officer and no director received any profit at any time from said State Investment Company in any manner or way.

"35. I further find that all of the defendants who were directors of State Investment Company paid for their capital stock in cash and that these defendants from time to time paid assessments and that when the assessments could not be paid those who were unable to pay were dropped and thereby lost the amount of money paid for capital stock of the corporation and for such advances as had been made to the corporation; and I further find that the assessments ranged any-

where from several hundred dollars to as much as $3600.00.

"36. I further find that there was no evidence of any monies having been squandered or wasted and that there was no fraud nor misrepresentation or conversion of corporate assets.

"37. I further find that there was no indication of negligence on the part of the directors and that the affairs of the company were given proper care and attention.

"38. I further find that there was no misconduct on the part of any officer or director and that no assets of the corporation were used by any officer or director for his personal use.

### "Conclusions of Law.

"I. I conclude as a matter of law upon the pleadings and the foregoing facts as found, that the plaintiff, I. J. Wolfe, is entitled to rescind the contract by reason of the breach of same by the State Investment Company, and that the State Investment Company is liable to him for his damages, being the amount of money that he paid on his contract through the E. J. Burke Company and the Fidelity Home Investment Company, together with interest, amounting to $1873.50 as of date of judgment.

. "II. I conclude as a matter of law that the Fidelity Home Investment Company on its answer having admitted that it held for the State Investment Company the sum of $277.50, that plaintiff is entitled to such sum, together with legal interest, and when so paid, to be deducted from the amount found to be due him by the State Investment Company.

"III. I conclude that as a matter of law upon the pleadings and the foregoing facts that the other defendants, being the directors and officers of the State Investment Company, each having used such care in the conduct of the affairs of the corporation as men of ordinary prudence would have used under the same circumstances, that they and each of them are not liable to the plaintiff in any sum whatsoever.

"IV. I conclude as a matter of law upon the pleadings and the foregoing facts as found, that the defendant, Morris Meyer, Trustee, for the beneficiaries of the deed of trust, took good title to said property, clear of any implied or equitable lien in favor of the plaintiff, I. J. Wolfe, for the amount that he had paid in on his contract."

Appellant for reversal of the judgment contends that the officers and directors of the State Investment Company were charged with the duty of seeing that the moneys and properties of the corporation were legally handled and disposed of, and that such moneys were paid to those entitled to receive the same or part thereof; that they failed so to do, and allowed said moneys to be paid to certain officers and directors of the corporation in discharge of certain sums borrowed by the corporation upon the indorsement of such officers and directors in preference to the claim of the plaintiff.

We overrule such contentions. The moneys paid to such officers and directors and the reasons for such payments being fully stated in the findings of the court, it is unnecessary to restate them here, as we find that such findings are amply supported by the evidence.

On the 3d day of February, 1931, the State Investment Company executed a deed of trust to secure a note it had executed for $3,500, the execution of which was sanctioned by a meeting of the stockholders. A corporation has the right to transact business with its directors and stockholders, as was true in this case, especially where they by advancing money to the corporation protected it and the plaintiff against a foreclosure of a lien against its properties.

Fletcher, in his Cyclopedia Corporations, vol. 4, par. 2326, states: "So long as a corporation is solvent, it may borrow money from or otherwise contract with an officer or director, and may pay him, or mortgage or pledge property to secure him, just as it may pay or secure any other creditor, and, if it afterwards becomes insolvent, the conveyance, mortgage or pledge will be valid as against other creditors, although the result may be to leave them unpaid. In other words, if there is an indebtedness owing a corporate officer from the corporation, and the corporation is solvent, there is no question but that the corporation may give its officer security for the debt, such as a note, mortgage, pledge of corporate bonds or the like, and thereby prefer such officer as a creditor. This is true of a mortgage or pledge by a corporation to secure a debt upon which its officers are liable as sureties

or indorsers, or to secure the officers themselves against liability or loss by reason of their guaranty, suretyship or indorsement."

Thompson on Corporations (3rd Ed.) vol. 2, par. 1329, stated that: "Directors may deal with the corporation while it remains solvent, with knowledge of its stockholders, may lend it money, take security, or buy property of it, the same as a stranger."

In the same paragraph the author states that a corporation may execute a mortgage to directors to secure them against liability of such directors as guarantors on obligations to obtain money to operate the corporation, and all that is required of the director is that he must act fairly, be free from fraud and oppression, act for the interest of the company, and impose no unfair or unreasonable terms.

In the case of Zorn v. Brooks, 125 Tex. 614, 83 S.W.(2d) 949, 951, the court used the following language: "The authorities generally are in complete accord in declaring that a contract between a corporation and one or all of its officers and directors is not void per se, but that it may be avoided for unfairness or fraud."

In Medford v. Myrick (Tex.Civ.App.) 147 S.W. 876, 879, the court states that directors of a corporation may purchase its bonds, or take them as security for their personal indorsement of the corporate paper, and that this is now well settled by authority. In support of this holding, the court cites the cases of College Park Electric Belt Line v. Ide, 15 Tex.Civ.App. 273, 40 S.W. 64, and Sanford Fork & Tool Co. v. Howe, Brown & Co., 157 U.S. 312, 313, 15 S.Ct. 621, 39 L.Ed. 713.

The testimony brought out in the case developed the fact that all stockholders were given the right to make contributions for the interest of the corporation, but that as time went on they declined to meet further assessments and dropped out.

What protection could the directors and stockholders who continued to put up money secure as against those stockholders who refused to meet them on the same footing? Is it to be argued that the little group who accommodated stockholders in the first place by indorsements on a note be denied the privilege and the right given

them by law of protecting themselves for money advanced, and particularly as against a group of stockholders who preferred to go no further in the undertaking?

Appellant seems to contend that those of the officers and stockholders who advanced money and simultaneously took a second lien to secure them for the sums advanced were taking some unfair advantage of plaintiff. In view of the findings of fact of the court, which we think are amply supported by evidence, we think such contention is untenable. Those who advanced money to the corporation, in behalf of whom a deed of trust was given, had the right to purchase the property at a foreclosure sale.

In vol. 14a, p. 115, par. 1881, Corpus Juris, it is stated: "That a director or officer who is a creditor of the corporation or has personal interest to protect, may purchase the property of the corporation at a judicial sale."

A particularly leading case on this subject is Twin-Lick Oil Company v. Marbury, 91 U.S. 587, 23 L.Ed. 328.

In 11 Texas Jurisprudence, par. 422, p. 87, it is said: "It seems that knowledge of the insolvent condition of the corporation does not of itself deprive a creditor of a preference accorded to or obtained by him, even if he is an officer of the corporation. There must be, in addition, either a want of good faith on the part of the officer, or the corporation must have ceased to do business so that a trust has attached to the property."

The case of McCormick v. Cornell & Wardlaw (Tex.Civ.App.) 193 S.W. 1083, 1085, even goes further. Note this excerpt: "The law seems to be well settled that until a corporation becomes not only insolvent, but has likewise ceased to be a going concern, it has the power to prefer its creditors by executing a mortgage or otherwise, and that a diligent creditor of such corporation, although he be a director, can in good faith secure such preference over other creditors by attachment or garnishment, etc."

We have reached the conclusion that the judgment should be affirmed, and it is accordingly so ordered.

Affirmed.