McCORMICK et al. v. CORNELL & WARD-
LAW et al. (No. 5721.)

(Court of Civil Appeals of Texas. Austin.
Feb. 21, 1916.)

1. CORPORATIONS ⨀➡309(1), 509(1)—INSOLVEN-
CY—PREFERENCES—ATTACHMENT—VALIDITY.

Until a corporation becomes not only insol-
vent, but has likewise ceased to be a going con-
cern, it has the power to prefer its creditors by
executing a mortgage or otherwise; and a dili-
gent creditor of such corporation, although he
be a director, can in good faith secure such
preference over other creditors by attachment
or garnishment.

[Ed. Note.—For other cases, see Corporations,
Cent. Dig. §§ 1366, 1372, 2006, 2009.]

2. CORPORATIONS ⨀➡688 — INSOLVENCY OF
FOREIGN CORPORATIONS—PREFERENCES—VA-
LIDITY.

Where a foreign corporation was insolvent
and its president knew of such condition and ne-
gotiated to prevent creditors from taking steps
against it and then assigned his claim against
the corporation to certain persons, they could
not, by attachment, secure a preferential lien
upon the corporation property as against other
general creditors.

[Ed. Note.—For other cases, see Corporations,
Cent. Dig. §§ 2661-2663.]

3. CORPORATIONS ⨀➡545(1) — INSOLVENCY —
PREFERENCES TO OFFICER—VALIDITY.

The law should properly hold the creditor
who was president and general manager of a
corporation to the utmost good faith in attempt-
ed collection of his claim, in order to obtain a
preference over other creditors.

Appeal from District Court, Tom Green
County; J. W. Timmins, Judge.

Suit by Cornell & Wardlaw assignees of
Charles S. Rees, against the Russell Oil Com-
pany wherein Clair McCormick and others,
as receivers, intervened. Judgment for plain-
tiffs, and interveners appeal. Reversed, with
instructions.

Boggess & Smith, of Del Rio, for appel-
lants. Cornell & Wardlaw, of Sonora, for
appellees.

Statement of the Character and Result of
Suit.

RICE, J. As appellees concur in appel-
lants' statement of the nature and result of
the suit, as set forth in their brief, we copy
same as follows:

"(1) This suit was originally brought by James
Cornell and L. J. Wardlaw, appellees, in the dis-
trict court of Sutton county, on November 5,
1913, against the Russell Oil Company, a for-
eign corporation, to recover an indebtedness al-
leged to be due by such corporation to their as-
signor, Chas. S. Rees, aggregating $1,053.19.
In plaintiffs' original petition it is alleged that
said indebtedness was assigned to plaintiffs Oc-
tober 28, 1913.

"(2) Coincident with the filing of their suit,
plaintiffs sued out against the defendant a writ
of attachment, directed to Edwards county,
which was executed by the sheriff of Edwards
county on November 6, 1913, by levying upon
certain well drilling machinery and other prop-
erty located in Edwards county, as the proper-
ty of the Russell Oil Company, all valued by the
sheriff at $1,600.

"(3) Service of notice of plaintiff's petition,
together with a certified copy thereof, was duly

had upon the defendant corporation by delivery
thereof to its vice president and secretary, re-
spectively, in New York City.

"(4) On March 24, 1914, Clair McCormick,
W. L. Holmeg, J. S. Gaughey, Eugene Thomp-
son, S. N. Gaughey, H. W. Lazrine, A. Holmeg,
the Sonora Mercantile Company, the Roach-Mc-
Lymont Company, and J. S. Gething, as receiv-
er of the Russell Oil Company, under appoint-
ment by the district court of Val Verde county
(appellants here) under express leave of the
court filed in the district court of Sutton county
their joint and several petitions of intervention
herein.

"(5) In briefest summary, the interveners, ex-
cept the receiver, set out in their petition of
intervention that defendant Russell Oil Com-
pany was a foreign corporation; that plaintiffs'
assignor, Chas. S. Rees, was the president of
said company; that the Russell Oil Company
was for several months prior to the institution
of plaintiff's suit insolvent, and wholly unable to
pay its debts in ordinary course; that said de-
fendant had, several months prior to plaintiffs'
suit, ceased to be a going concern, by reason
whereof the assets and property of defendant, lo-
cated in Texas and elsewhere, had become, prior
to plaintiffs' suit, and were then, a trust fund
for the benefit of all the creditors of said defend-
ant; that the interveners, except the receiver,
are general and unsecured creditors of the Rus-
sell Oil Company.

"(6) Petition of intervention further avers
that appointment on November 10, 1913, of J.
S. Gething as receiver of said company by the
district court of Val Verde county, at instance
of Clair McCormick for benefit of all creditors
who might join therein or intervene, and further
alleged said receiver's qualification under such
appointment.

"(7) The petition of intervention alleged in-
debtedness of the Russell Oil Company to each
of the interveners in the amounts and for the
consideration following: Clair McCormick, for
work and labor, $772.72; Clair McCormick, as-
signee, material and supplies, $15.40; J. S.
Gaughey, for work and labor, $205.00; J. N.
Gaughey, for work and labor, $195.00; Eugene
Thompson, for work and labor, $230.00; W. L.
Holmeg, for work and labor, $132.00; H. W.
Lazrine, for work and labor and cash, $509.96;
A. Holmeg, for work and labor, $7.20; Roach-
McLymont, for material and supplies, $53.40;
Sonora Mercantile Co., for material and sup-
plies, $445.85.

"(8) It is alleged by interveners the claims for
work and labor accrued in March and April,
1913, and was just and due and unpaid.

"(9) Interveners further averred that the only
tangible assets belonging to defendant out of
which its creditors can reasonably hope to real-
ize their debts, consisted of the property seized
under the plaintiffs' writ of attachment.

"(10) That plaintiffs are the assignees of
Chas. S. Rees, who is now and was, at the time
of the institution of this suit, and for a long
time prior to the institution of this suit, the
president and one of the directors of said Rus-
sell Oil Company.

"(11) That said Chas. S. Rees was, at the
time of the institution of said suit, and is now,
the principal managerial officer of the defendant,
and has charge, direction, and control of its af-
fairs.

"(12) They further alleged: 'These interven-
ers are informed and believe, and so charge the
fact to be, that this suit was brought by the
plaintiffs herein, at the instance and request of
said Chas. S. Rees, the latter acting in collu-
sion with the defendant herein for the purpose
of hindering, delaying, and defrauding these in-
terveners, the creditors of the defendant.'

"(13) Interveners prayed that they be allowed
to defend against the suit brought by plaintiffs,

who are the assignees of Chas. S. Rees; that on final trial interveners have judgment against defendant Russell Oil Company for their several debts due them, with interest and all costs of suit; that the plaintiffs be denied a preferential claim or lien upon the property of the defendant herein; that the property seized under plaintiffs' writ of attachment be sold under orders of the court and the proceeds be applied ratably to the payment of the interveners' claims and of others who may join or intervene herein, and for general relief.

"(14) Service of notice of interveners' petition of intervention, with certified copy thereof, was duly had upon the Russell Oil Company, by service upon its vice president and secretary respectively.

"(15) No answer or appearance was made by the Russell Oil Company, nor was any further pleadings filed by the plaintiffs.

"(16) On November 3, 1914, an order was made by the district court of Sutton county in said cause, by agreement, directing sale of the attached property by the sheriff, and venue was changed to Tom Green county.

"(17) The transcript from Sutton county, certified May 1, 1915, was filed in the trial court May 8, 1915.

"(18) On January 31, 1916, the case was tried to the court, and judgment was rendered in favor of plaintiffs, establishing their debt against defendant Russell Oil Company, adjudging a foreclosure of their attachment lien, and denying interveners any relief. Interveners in open court excepted and gave notice of appeal.

"Statement of the Evidence.

"An agreement as to facts was, on the trial below, read in evidence. For convenience, those parts thereof deemed by appellants material and controlling are here stated. It was agreed:

"(1) That the debts of the various interveners are likewise just, due, and unpaid, and were just, due, and unpaid at the time of the filing of their petition of intervention, and were just, due, and unpaid at the time of the institution of this suit by the filing of plaintiffs' original petition, and that the facts alleged in their petition of intervention as to the accrual and existence of said debts are true.

"(2) That at the time of the institution of this suit those interested in the Russell Oil Company contemplated the continuance of drilling operations, and intended to continue to prospect for oil or gas upon lands held by them under lease. It is agreed that this clause shall be considered and construed in connection with the letter of Chas. S. Rees, dated October 30, 1913.

"(3) That P. M. Shannon, vice president Russell Oil Company, contracted the various debts upon which the claims of interveners are based.

"(4) That the indebtedness of the Russell Oil Company to Chas. S. Rees, basis of plaintiffs' suit, was assigned by him to the plaintiffs for the purpose of enabling them to collect same for his account, and that plaintiffs herein have not paid Chas. S. Rees anything of value as a consideration for said assignment, other than the obligations of plaintiffs, as attorneys, to collect same for him.

"(5) That Chas. S. Rees did not direct the suing out of the writ of attachment in this case, but forwarded to Cornell and Wardlaw, as attorneys, the assignment, copied and set out in plaintiffs' pleadings, with the request that they proceed to the collection of same in a manner dictated by their judgment. That plaintiffs accordingly resorted to attachment proceedings for the purpose of acquiring jurisdiction, and did not resort to the attachment for the purpose of securing a preference over other creditors.

"(6) That all the debts specified in interveners' petition of intervention were incurred by the Russell Oil Company in connection with its operations in Edwards county.

"(7) That Chas. S. Rees was, during the time of said operations, a director and the president of the Russell Oil Company, and was president of said company at the time of the institution of this suit.

"(8) That on October 18, 1913, prior to the institution of plaintiffs' suit, Messrs. Boggess & Smith, attorneys for interveners herein, addressed a communication to P. M. Shannon, V. P., of the Russell Oil Company, at Jasper, Ala., a carbon copy being sent to A. T. Bulkeley, secretary treasurer of the Russell Oil Copmany, 1123 Broadway, New York, the subject of such communication being a request for payment of the claims of interveners. That shortly after October 22, 1913, Messrs. Boggess & Smith, attorneys for interveners, received a communication purporting to be signed by Chas. S. Rees, president, dated October 22, 1913, upon stationery bearing the printed name 'Russell Oil Company, 1123 Broadway, Cor. 25th St.,' and bearing the printed legend 'Charles S. Rees, President,' which said letter it is agreed will be read in evidence, and carbon copy of Messrs. Boggess & Smith's letter of October 18, 1913, may be read in evidence when identified by Lamar Smith.

"(9) That on October 23, 1913, Boggess & Smith addressed a letter to Chas. S. Rees, president of the Russell Oil Company, a carbon copy of which may be read in evidence upon being identified by Lamar Smith.

"(10) On October 30, 1913, Boggess & Smith received from Chas. S. Rees, president of the Russell Oil Company, a letter which it is agreed may be read in evidence upon being identified by Lamar Smith.

"(11) That the oil leases taken and owned by the Russell Oil Company before and after the institution of plaintiffs' suit were not paid for in cash, but the consideration therefor was payment of royalty upon oil or gas found.

"(12) That the Russell Oil Company had not, at the time of the institution of this suit, and has not now, within the knowledge of plaintiffs or these interveners, any property or funds in Texas, other than the property seized under plaintiff's writ of attachment, and the leaseholds as above set out.

"(13) Interveners then read in evidence letter received from Chas. S. Rees dated October 30th, above referred to, as follows: 'Our secretary, Mr. Bulkeley, being out of the city, and not being in position to know if he has advised you as to the conclusion of the stockholders' meeting, held Oct. 24, have decided it may be well for me to inform you what action was taken in regards to your favor of the Oct. 16th. The stockholders' meeting was held on October 24, with a majority of stock represented and your letter and proposition as to bill of sale, was presented for their consideration, and I am very sorry to say, did not meet with their approval, for it was well known by the majority of the stockholders that Mr. Shannon had superseded his authority in incurring this indebtedness, also felt that Mr. McCormick must have been aware of the fact as well and they also feel that the material, etc., making up the general outfit, is worth so much more than the amount in question, that it was decided at the meeting that a committee should be appointed to try and see if they could not possibly devise some means whereby they could secure sufficient capital to meet those claims which are just, as I might say here that some of the claims are somewhat irregular and naturally would have to have some adjustment of them before they are paid. The committee is also authorized to try and not alone secure additional capital to meet the just claims, but secure enough capital to continue operations down there. In case they fail in this manner, they will try to sell the effects

in general and liquidate its indebtedness. I assure you the company always desired to pay its indebtedness and always has, except up to the present claims, which you are representing, but I assure you that this was incurred entirely on the personal authority of the manager, without the knowledge or consent of the company. Mr. McCormick who, as Mr. Shannon states, was the representing agent and should have known, if he really did not know, that no such liabilities should ever have been incurred against the company, for Mr. Shannon was particularly told and warned, as well, not to incur any further indebtedness than the money had in hand to take care of. He makes a great many plausible excuses, and puts the burden of some of his excuses on Mr. McCormick, still all this will not put the company in good appearance down there with you, but we think and hope that under the circumstances, that no action will be taken against the company, until we have given this committee some time to try and relieve us of our present position. I might say that the company fully understands your position, representing these claims and know that the majority of your clients are familiar with the outfit we have there, as well as to its costs, and that there would be no danger of its ever being taken away from there, or if sold, that it is well worth all the claims you represent, in fact, twice as much, at any decent sale. I do not desire to advise you as to your action in securing your clients' claims by litigation, but I do say that the committee will have to be well assured that these claims are all just and right against the company. In closing I desire to inform you this was the decision of the stockholders' meeting, and would be pleased to hear if our secretary has so advised you. Yours very truly, Chas. S. Rees, Pres't.'

"(14) The district court of Val Verde county made an order appointing intervener J. S. Gething receiver of the Russell Oil Company. All the money derived from the sale of the attached property, after payment of costs, aggregating $956.45, has been paid to appellees by the district clerk."

## Opinion.

[1] The sole question for our determination is whether or not the facts as disclosed by this record will justify the judgment of the court awarding appellees priority of payment of their claim out of the fund of the Russell Oil Company deposited in the registry of the court, arising from the sale of the well machinery under the writ of attachment. We are not unmindful of the finding of fact by the trial court that the company, at the institution of this suit, was a solvent, going concern, and that the law seems to be well settled that until a corporation becomes not only insolvent, but has likewise ceased to be a going concern, it has the power to prefer its creditors by executing a mortgage or otherwise, and that a diligent creditor of such corporation, although he be a director, can in good faith secure such preference over other creditors by attachment or garnishment, etc. See Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Tex. 143, 24 S. W. 16, 22 L. R. A. 802; Shoe Co. v. Thompson, 89 Tex. 501, 35 S. W. 473; Frank Co. v. Berwind, 47 S. W. 681, in which latter case it was held that a director of a corporation in a state of insolvency, but yet a going concern, may, by attachment and levy on its property, gain a preference over other creditors for a debt incurred by such corporation in good faith to such director, since it was permissible for the corporation to voluntarily prefer one of its directors. Notwithstanding this doctrine, appellants contend that it should not obtain as applied to the facts of this case, urging by their eighth assignment, submitted as a proposition, that the court erred in the judgment rendered herein in adjudging that the interveners take nothing by their suit, but as against them that the defendant company go hence without day; and that they likewise take nothing as against plaintiffs, because the undisputed facts and testimony show: (a) That the Russell Oil Company was justly indebted to interveners in the amount specified in their petition of intervention herein; (b) that plaintiffs are the assignees and suing for the benefit of Chas. S. Rees, a general and unsecured creditor of the defendant company; (c) that the said Rees was at the time of the issuance and and levy of plaintiffs' writ of attachment a director and the president of the Russell Oil Company; (d) that at and prior to the issuance and levy of plaintiffs' writ of attachment, the said Chas. S. Rees, plaintiffs' assignor, had actual knowledge of interveners' indebtedness against the Russell Oil Company; (e) that at and prior to the issuance and levy of plaintiffs' writ of attachment, the Russell Oil Company was, to the actual knowledge of said Rees, financially embarrassed, and was unable to discharge its obligations in due course of business; (f) that said Chas. S. Rees, plaintiffs' assignor, was guilty of bad faith towards the interveners in urging them to defer legal action against the Russell Oil Company, of which he was the president, while at the same time arranging for the issuance and levy of what is now claimed on his behalf to be a preferential attachment on all its known tangible assets in Texas; (g) that said Chas. S. Rees, plaintiffs' assignor, shortly prior to the levy of plaintiffs' writ of attachment, represented to interveners' attorneys, in his capacity as president of the Russell Oil Company, that if sufficient capital was not raised to pay interveners' debts, the affairs of the company would be liquidated. And by their second proposition thereunder it is insisted that, where it is shown without dispute that a foreign corporation doing business in Texas is financially embarrassed; that the president of such corporation has actual knowledge thereof, and such corporation, through its president, had negotiated with the attorneys in Texas for certain general creditors of such corporation, and urged that no legal action be taken against the corporation pending efforts of its stockholders' committee to reorganize its affairs; that such president had represented to the attorney for such creditors that if sufficient capital was not raised to pay its debts, its affairs would be liquidated;

that while such negotiations were pending the president of the company assigned his unsecured claim against the company to the Texas attorneys for the company for collection for his account—such assignees could not, by attachment, secure a preferential lien upon all the tangible assets of such corporation in Texas as against the other intervening general creditors of such corporation.

[2] We agree with appellants in this contention, for here the creditor who seeks to apply the entire assets of this concern to his own separate use and benefit is shown to be aware of the financial straits of the company, its inability, not only to meet its own obligations, but likewise the claims of interveners and others who have furnished labor and material for conducting its business, all of which was long past due; that he had gone so far as to advise their attorneys that a committee of the stockholders had been appointed for the purpose of making arrangements by which not only to secure money to pay off its indebtedness in Texas, but also to procure funds to continue operations down there, and that if this could not be accomplished, the company would go into liquidation, expressing the hope that in the interim no action would be taken by them looking to the enforced collection of the claims of their clients. Two days before writing this letter, and before such committee had reported, we find this director and president, who was the general manager of the company, assigning and forwarding his claim for collection to his attorneys in Texas, with instructions to use their best judgment in its collection, which resulted in the suing out and levying of this attachment on November 5th upon all of its available assets, of which fact no mention was made in said letter. The only character of business the company seems to have been doing at this time was the procuring of oil leases for a royalty, but for which no cash money was paid.

[3] We believe that the law, under such circumstances, should properly hold a creditor, who is the president and general manager of such company, to the utmost good faith in the attempted collection of his claim in order to obtain a preference over other creditors; and such seems to have been the view entertained by Mr. Justice Fly in Frank Co. v. Berwind, supra. In 10 Cyc. p. 1255, we find it stated:

"Fourth. Doctrine that corporations cannot prefer their directors and officers: (a) Statement of Doctrine. The better doctrine and one resting on principles of justice too obvious for explanation or comment, is that when a corporation is insolvent, or when it reaches such a condition that its creditors, (sic directors) see that they must deal with its assets in the view of its probable suspension, they cannot use those assets to prefer themselves, as creditors or trustees, in respect of past advantages to the prejudice of its general creditors" (citing numerous authorities).

The editor, continuing on page 1256, says: "The governing principle is that the directors and managers of insolvent corporations are trustees of the funds as well for the creditors as for the corporation, and are bound to apply them pro rata, and cannot use them to exonerate themselves to the injury of other creditors."

Again on the same page we find the following:

"This obligation to hold the assets of the corporation as a trust fund for equal distribution among its creditors attaches to the directors, not only when they have voted the corporation to be insolvent, but whenever the fact that it must discontinue business by reason of insolvency comes to their knowledge. This knowledge of insolvency is not, and cannot from the very nature of things, be a positive knowledge. It is a reasonable belief, founded upon probabilities, having reference to the company's affairs. It is sufficient to put an end to the rights of directors to prefer themselves as creditors for them to know that it is probably insolvent, although sometimes, it is to be confessed, the courts have gone far in indulging a want of knowledge or judgment on the part of the directors in this particular. The only sound principle, then, is that the directors of the corporation cannot prefer themselves as creditors, either when it is in fact insolvent, or when its condition is such that the act is done by them in contemplation of its insolvency."

Notwithstanding the law gives a preference to a creditor, even though he be a director, for the enforcement of his claim against a solvent, going corporation, still, where the record shows, as it does in this instance, that such creditor, who was the manager thereof, was well aware that his company was on the verge of insolvency, owing debts for labor, supplies, and material that were long past due, and which it was unable to pay, he will not be permitted to lull to inaction other creditors, or their representative, and thereby obtain an advantage over them in the collection of his own claim; but the law, under such circumstances, will exact of him the utmost good faith toward them.

Believing, for the reasons stated, that the record in this proceeding did not justify the trial court in awarding appellees a preference and priority of payment out of said fund, its judgment is reversed, and the court is instructed to render judgment distributing the fund, heretofore mentioned, in the registry of the court, ratably among all creditors of said corporation whose claims have been established, including those of plaintiffs and interveners, either through its receiver or through any other agency the court may see proper to order.

Reversed, with instructions.