**WESTERN INN CORPORATION et al.,**
**Appellants,**

v.

**Bert E. HEYL et al., Appellees.**

**No. 17090.**

Court of Civil Appeals of Texas,
Fort Worth.

March 20, 1970.

Rehearing Denied April 17, 1970.

Kilgore & Kilgore, and W. D. Masterson, Dallas, for appellants.

Sterling W. Steves, Fort Worth, for Harry Austman and Rubye E. Jones, appellees.

Pannell & Pannell, and E. C. Pannell, Fort Worth, for Bert Heyl, appellee.

## OPINION

LANGDON, Justice.

This suit involves a class action initiated by former stockholders of Western Hills Inn, Inc., a dissolved Illinois corporation, and of Western Inn Corporation, an inactive Texas corporation, in their individual rights, against the defendants, Bert E. Heyl, Harry Austman and Rubye E. Jones, as former controlling directors of both corporations and as former controlling stockholders of the Texas corporation. The plaintiffs seek to enforce a constructive trust against the defendants by reason of alleged wrongful acts on their part in acquiring title to the property of the Texas corporation as result of a foreclosure in violation of their fiduciary duties as officers, directors and controlling stockholders. The plaintiffs claim a 35.4% interest in the property as of the time of foreclosure or the value thereof.

The case was tried to the court without a jury. This appeal is from a take nothing judgment rendered by the trial court against the plaintiffs. At the request of the appellants findings of fact and conclusions of law were made and filed by the court supplemented by additional findings and conclusions.

The appeal is based upon nine points of error, the first and second of which complain of the court's failure to find as a matter of law that (1) appellees hold title to the hotel property as constructive trustees for appellants, and (2) foreclosure by appellees was a breach of appellees' fiduciary duties to the appellants. Points three through six, both inclusive, complain of the court's findings that (a) appellees paid a fair and reasonable market price for the hotel property at the foreclosure sale and (b) that such foreclosure was fair because there was no evidence or insufficient evidence to support such findings and such findings are against the great weight and preponderance of the evidence.

By their points 7, 8 and 9, respectively, the appellants contend that the court erred in holding that recovery by them is (7) "barred by a prior judgment in another suit to which they were not parties, either by reason of res judicata, collateral estoppel or compulsory counterclaim," (8) "barred by any statute of limitations" and (9) "in finding that a recovery by Appellants would be inequitable."

We affirm.

Before discussing the points of error presented by this appeal the following events relating thereto are summarized as follows:

Western Hills Inn, Inc., an Illinois corporation, was formed in 1956 to construct and to operate Western Hills Inn on property located in Euless, Texas. Construction contracts for the motel were let in July, 1956, before the corporation had obtained interim or long term financing. From that date forward it had continuing financing difficulties. At various times during the progress of construction, the stockholders of the corporation, including certain of both appellants and appellees, were required to lend substantial funds to keep the project alive.

By the summer of 1957 it became abundantly clear to the appellees and the appellants, all of whom were stockholders in the Illinois corporation, that construction of the hotel could not continue without (1) the infusion of large amounts of additional capital by them or (2) to obtain a long term financing commitment. Efforts were made to secure the financial resources of some outside party. Three separate proposals to buy or to merge were presented to the corporation at this time including a proposal for reorganization from Warren Avis in August, 1957. All three proposals were rejected by the eleven (11) member board of the corporation, which at that time consisted of the three (3) appellees and eight (8) of the appellants.

Concerning the Avis proposal the court found that it could not have been consummated by the Illinois corporation because the latter could not meet its terms.

In connection with the above proposals the appellants at one point in their brief stated that the board granted the request of the appellees to match the Avis proposal and at another point that the stockholders of the Illinois corporation accepted the appellees' offer to supply the necessary financing in exchange for control of the hotel. The appellees state in their brief that they made an oral offer by which they were committed to secure loans, including a permanent loan to provide for the necessary financing in return for 50% of all profits of the corporation after the stockholders had been repaid and that such offer was accepted.

Regardless of the nature of the offer and its acceptance the appellees thereafter caused Western Inn Corporation, a Texas corporation, to be formed for the purpose of purchasing the hotel project from the Illinois corporation.

Under the terms of a written contract between the two corporations which was completed on December 5, 1957, all of the assets of the Illinois corporation, including the hotel, were sold to the Texas corporation. In return the Illinois corporation received almost one-half of the voting stock and a debenture of the Texas corporation. Soon after the initial contract was completed the directors and stockholders unanimously approved the exchange of the debenture for more stock of the Texas corporation and 282,113 shares of the Texas corporation voting stock were issued to the appellees, individually, in consideration of their agreement to finance the hotel. This vested control of the corporation in the appellees. The Texas corporation stock representing almost one-half of the voting stock to be transferred to the Illinois corporation (its only remaining asset) was issued to Robert J. Raymond who became President of the Illinois corporation in 1958. No effort was made to disburse the stock and Raymond retained it as trustee and proxy for the Illinois stockholders. Thereafter Raymond voted this entire block of stock for and on behalf of the Illinois corporation and its stockholders at all meetings of the Texas corporation. Park, former president of the Illinois corporation, and Raymond represented the Illinois stockholders on the Texas corporation board.

Following the formation of the Texas corporation and the transfer of the assets of the Illinois corporation to it the appellees were the controlling stockholders of the Texas corporation and constituted a majority of the Board of Directors of both corporations.

The court made findings that the appellees did not misrepresent any material facts in connection with the transaction involving transfer of the assets from the Illinois corporation to the Texas corporation and that all such transactions were approved and ratified by the stockholders of each corporation at duly called and constituted meetings.

A permanent loan commitment in the sum of $870,000.00 was obtained by the appellee, Heyl, from the Continental Life Insurance Company. For reasons beyond his control this loan commitment was never consummated. The court found that the appellees

made good faith efforts to obtain long term financing and that the failure to consummate the above loan was not their fault.

Financial burdens continued to mount. Large installments due the Republic National Bank on its loan, other debts of the corporation, including unpaid construction bills and the cash flow deficits of the hotel led to the necessity in February, 1958, of a loan by the appellees to the corporation in the amount of $105,000.00 which was paid to the Republic National Bank for disbursement. This loan at 6% simple interest was the first of many advances totalling $435,424.00 made by the appellees to meet emergencies and to keep the doors of the hotel open. Appellees did not receive payment of either principal or interest on this money. The loans were reduced to promissory notes and secured by deeds of trust on the corporate assets. The notes went into default. They were renewed at 10% interest.

Throughout this period of financial stress everyone including John Park, the appellees and many real estate brokers made efforts to sell the hotel which had been appraised by various persons at figures ranging from $982,000.00 to $1,700,000.00 at different times.

No prospective buyer was found who offered an acceptable price. All offers made were rejected not only by the appellees but also by Park. The court found that the appellees made bona fide, good faith efforts to sell the hotel and its properties and transmitted every offer they received to the appellants.

In May of 1961 (or April) Heyl met with the shareholders of the Illinois corporation in Aurora, Illinois. He explained to them that the appellees could not put any more money into the hotel. The appellants were invited to advance money. They declined. The appellants took the position that the appellees were obligated to continue to advance as much money as would be required for the operation of the hotel for an indefinite period of time in the future. The appellees informed the appellants that it would be necessary for them to foreclose their liens in order to protect their interests.

The appellants in describing the Aurora, Illinois, meeting stated that on such occasion they were informed that the appellees would no longer continue to honor their agreement to finance the hotel. This was a reference to the oral agreement above referred to which followed the Avis proposal.

The court in this connection made findings that the appellees did not at any time agree (1) to provide all necessary financing for the hotel and other properties and (2) never to foreclose on the loans they made to Western Inn Corporation.

In May of 1961, following the Aurora, Illinois, meeting the appellees resigned their positions as officers and directors of the Texas corporation. The Republic National Bank loan was six months delinquent and in general the financial situation was deteriorating. At this point the appellees posted notices of foreclosure of their deed of trust lien securing the notes owed to them by the Texas corporation.

Both Park and Raymond had full knowledge of these developments and imparted such knowledge to the directors of the Illinois corporation. On July 4, 1961, the trustee, Evans Karpenko, held a public sale on the steps of the Courthouse. At such time the appellees bid in the hotel property at the price of $1,017,042.31. Theirs was the only bid.

The findings made by the court reflect that appellants had full knowledge of the foreclosure and of appellees' intention to foreclose prior to the time of actual foreclosure. That appellees (1) made no material misrepresentation of fact in connection with the foreclosure, (2) acted with good faith at the time thereof and (3) paid a fair and reasonable market price at the trustee's sale.

After taking possession, appellees advanced $30,000.00. This was used to pay off the small unsecured debts of the Texas cor-

poration such as utilities, franchise taxes, and other bills. Still faced with the monthly payments of the note of Republic National Bank the appellees managed to arrange financing from the Fort Worth Savings and Loan Association on the basis of their personal endorsement. A commitment letter was issued in September of 1961. The loan was closed in August of 1962. Before such financing could be completed it was necessary to clear title to the property. To accomplish this a suit (Cause No. 21578-C) was filed in the 67th District Court of Tarrant County, Texas, entitled Bert E. Heyl, et al. v. Western Hills Inn, Inc., et al. In such suit the appellees sued both the Illinois and Texas corporations. Under an amended petition the suit was broadened to include the issues of title to the property. Service was had upon Park for the Texas corporation and upon Raymond for the Illinois corporation. The appellants employed Judge Atwood McDonald to represent the interests of the two corporations. Answers were filed for both corporations and the issues joined in the suit. The case remained on file from July 1961, until April, 1962, to permit appellees to sell the hotel but they could not find a buyer. In April, 1962, Heyl signed a letter agreement, countersigned by McDonald, whereby the appellees, although having obtained a valid foreclosure, would allow the plaintiffs to share in 50% of the net proceeds if the hotel was sold in the following five years, after appellees recouped their indebtedness and capital investment, if, but only if, a release was given the appellees from the stockholders of the Illinois corporation. No such release was ever given. On April 27, 1962, an agreed judgment on the merits was entered in the case awarding complete title, interest, and use in the hotel to the appellees as against the two corporations. Park and Raymond, representing the Illinois stockholders, were fully aware of all matters involved in the suit prior to and at the time the judgment was entered but failed to assert any claims on behalf of the appellants.

Park and Raymond, the latter as holder of the stock belonging to the Illinois corporation, both acting as the representatives for all the Illinois stockholders, made no attempt to set the judgment aside or to appeal therefrom. Nothing was heard from appellants by way of protest or complaint until March, 1965, when the present cause of action was filed. By such suit they contend that they were victims of a conspiracy, beginning in September, 1957, in which appellees sought to gain control of the hotel and appropriate the equity of the other shareholders to their own use and benefit by malicious and wrongful acts, including "gross mismanagement" of the hotel, the charging of usurious interest on their loans, and the commission of "grossly fraudulent acts and misrepresentations". In connection with such claims the appellants assert that following the foreclosure there was a dramatic improvement in the hotel operations. That a substantial increase in the cash flow of the operation came about because of improved management instituted by the appellees only after foreclosure. The gist of this argument is to the effect that the appellees, particularly Heyl, had been running the hotel for three years before the foreclosure at a loss and thereafter made improvements in management which could and should have been made before foreclosure. The record reflects that both Park and Raymond had made visits to the hotel prior to the foreclosure and that Heyl had been commended for his supervision of the hotel management in letters from Park. The court found that the appellees did not mismanage the hotel and its properties or cause such mismanagement and further that they acted in good faith in all of their dealings with the two corporations at all times material to this cause.

The following findings made and filed by the court are summarized as follows:

Each of the loans made to the corporation by the appellees, Heyl, Austman and Jones, was approved by the board of directors and by the stockholders of the Western Inn Corporation at duly called and constituted meetings of each. As to each loan a full disclosure of the amount, terms, secur-

ity, and interests of the appellees was made to the board of directors and to the stockholders at their respective meetings before the approval by the board and the unanimous approval and ratification by the stockholders present on each occasion. Robert J. Raymond and John M. Park were present and voting in favor of ratification and approval on each occasion. The only persons ever absent at a stockholders meeting were one or more of the appellees. As to each loan individually and all of them collectively the amounts and terms as well as the security taken were found to be fair and reasonable in all respects to Western Inn Corporation. The appellants were aware, knew or reasonably should have known, that the defendants intended to foreclose if default in payment of the loans occurred. Appellants reasonably should have been aware, or were aware, of such activities on the part of appellees in connection with the financing and management of the Western Inn Corporation as to have caused a reasonable man to investigate same.

We have reviewed the entire record in this case. In our opinion there is ample evidence in support of the court's findings and its judgment based upon such findings.

The first six points are grouped and as such are briefed and argued together by both sides. The appellant states that the facts of the case can be reduced to a simple question, i. e.: "Can controlling stockholders, officers and directors of a corporation appropriate solely to themselves all of the corporate assets to which they have contributed 60% of the cost, and leave the minority stockholders who contributed 40% of the cost with absolutely nothing?" In support of a negative answer to the question the appellants rely upon Canadian Country Club v. Johnson, 176 S.W. 835 (Amarillo Tex.Civ.App., 1915, writ ref.), and McLean v. Hargrove, 139 Tex. 236, 162 S.W.2d 954 (Tex.Com.App., 1942, opinion adopted), which we believe have no application to the facts of this case.

■ To the same effect, but stated in another way, the appellees say that "The issue here is whether or not it is unlawful for officers and directors of the corporation to loan money to a corporation in desperate financial circumstances, take security therefor and then foreclose upon the loans." In support of their contention that such action is not unlawful the appellees rely upon the following authorities, which we believe to be controlling of the issues involved: Kendrick, in "The Interested Director in Texas," 21 S.W.L.J. 794, 801, which reads: "There is also a line of cases which hold that an interested director transaction is always voidable at the option of the corporation even though fair; but this is a minority rule and has little support. Canadian Country Club v. Johnson, an early Texas case, held that such a transaction could be 'avoided at the corporation's option whether the transaction be fair or not.' But this view has not prevailed in later Texas cases." Citing: International Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567 (Tex.Sup., 1963); Popperman v. Rest Haven Cemetery, Inc., 162 Tex. 255, 345 S.W.2d 715 (Tex.Sup., 1961); Phil H. Pierce Co. v. Rude, 291 S.W. 974 (Dallas Tex.Civ.App., 1927, writ dism.). In accord with this view is Lebowitz, "Director Misconduct and Shareholder Ratification in Texas", 6 Baylor Law Review 1 (1953); Pruitt v. Westbrook, 11 S.W.2d 562 (Fort Worth Tex.Civ.App., 1928, no writ hist.); Wiberg v. Gulf Coast Land & Development Company, 360 S.W.2d 563 (Beaumont Tex.Civ.App., 1962, ref., n. r. e.).

See also Davis v. Nueces Valley Irr. Co., 103 Tex. 243, 126 S.W. 4 (1910) Dunagan v. Bushey, 152 Tex. 630, 263 S.W.2d 148 (1953); McLendon Hardware Co. v. Black, 264 S.W. 1011 (Austin Tex.Civ.App., 1924, no writ hist.); 19 C.J.S. Corporations § 783, pp. 156, 157; Hall v. Crawford & Delphenis Co., 11 S.W.2d 804 (Texarkana Tex.Civ.App., 1928, writ dism.); Rogers-Hill & Co. v. San Antonio Hotel Co., 23 S.W.2d 329 (Tex.Com.App., 1930); Pad-

dock v. Siemoneit, 147 Tex. 571, 218 S.W. 2d 428 (Tex.Sup., 1949).

█ It would appear from the above authorities that ratification by the stockholders, by unanimous or majority vote, will remove any taint of control, if any, that the appellees here may have exerted over the board of directors. In our opinion the appellees have complied with all standards of conduct and disclosure required of them by law. See also 14 Tex.Jur.2d, Corporations, § 226.

█ The affirmative relief sought by the appellants due to fraud, self dealing and related allegations has no merit.

Texas courts have considered and approved the action of an officer or director in loaning money to his corporation, taking corporate property as security therefor, and subsequently foreclosing on his security. Wolfe v. State Inv. Co., 95 S.W.2d 511 (Galveston Tex.Civ.App., 1936, writ dism.); College Park Electric Belt Line v. Ide, 15 Tex.Civ.App. 273, 40 S.W. 64 (Tex.Civ. App., 1897, writ dism., w. o. j. at 90 Tex. 509, 39 S.W. 915).

The following is quoted from Wolfe v. State Inv. Co., supra:

"Thompson on Corporations (3rd Ed.) vol. 2, par. 1329, stated that: 'Directors may deal with the corporation while it remains solvent, with knowledge of its stockholders, may lend it money, take security, or buy property of it, the same as a stranger.'

"* * *

"In the case of Zorn v. Brooks, 125 Tex. 614, 83 S.W.2d 949, 951, the court used the following language: 'The authorities generally are in complete accord in declaring that a contract between a corporation and one or all of its officers and directors is not void per se, but that it may be avoided for unfairness or fraud.' "

The court said in effect that all stockholders had been requested to aid the company in its economic problems, but as time went on, most of them declined to meet assessments then it wrote:

"What protection could the directors and stockholders who continued to put up money secure as against those stockholders who refused to meet them on the same footing? Is it to be argued that the little group who accommodated stockholders in the first place by indorsements on a note be denied the privilege and the right given them by law of protecting themselves for money advanced, and particularly as against a group of stockholders who preferred to go no further in the undertaking?"

In College Park Electric Belt Line v. Ide, supra, 40 S.W. at p. 67, it was said: "Then the question arises on the validity of said transaction as to the directors interested therein. Mr. Thompson, in his excellent work on Corporations, in treating of this subject, says: 'We therefore find the prevailing doctrine to be that the directors of a corporation may advance money to it, may become its creditors, may take from it a mortgage or other security, and may enforce the same like any other creditor, but always subject to severe scrutiny, and under the obligation of acting in the utmost good faith. * * * So it has been held that, in order to enable a manufacturing corporation to pay its debts, and thus continue its business, its directors may guaranty payment of its note made to its own order, and take as security for their liability its mortgage of all its property. * * *'

"* * *

"There is no evidence showing fraud or unfair dealing in the transaction, and, if the clause in the deed of trust making them beneficiaries in the event they had to pay the debt should be held void, still we are of the opinion they had the right to bid in the property at the sale for their protection. Having made themselves liable for the payment of the debt, it would be a harsh rule that would force them to remain passive and allow property to be sacrificed at judicial sale for less than the debt, and

require them to pay the amount remaining due."

See also the following authorities as to the standards and tests to be applied by a court when director loans and foreclosure are in issue: McCormick v. Cornell & Wardlaw, 193 S.W. 1083 (Austin Tex.Civ. App., 1916, no writ hist.); Popperman v. Rest Haven Cemetery, Inc., supra; Henger v. Sale, 365 S.W.2d 335 (Tex.Sup., 1963).

The first six (6) points including the no evidence and the insufficient evidence points are overruled.

There is yet another compelling reason why the appellants cannot prevail in this suit, i. e., the appellees' defense of res judicata. The validity of this defense is attacked by the appellants' seventh point.

The following facts which are deemed pertinent to a consideration of this point appear in the record:

July 18, 1961, Cause No. 21578–C was filed in the 67th District Court of Texas. The case was styled Bert E. Heyl, et al. (the appellees in the present case) v. Western Hills Inn, Inc., et al. (the two corporations).

April 27, 1962—an agreed judgment was entered in the above cause. No appeal from such judgment was ever perfected nor attempted. The judgment has not otherwise been attacked. It continues as a final and binding judgment.

Among its other findings the court found that both corporations were properly before the court in the prior suit and that the court had jurisdiction of the parties to such suit and of the issues in controversy therein. The suit was in the nature of a trespass to try title suit. It involved the same hotel and the other properties of the corporations as are here involved. It involved the same rights and the same parties. All of such issues were fully and finally adjudicated by final judgment against the two corporations. All of the allegations of facts in the case at bar involving fraud, self

dealing and related matters were known to the appellants at the time the prior suit was pending. Two of the appellants, Park and Raymond, both of whom were board members or officers of the two corporations, hired an attorney and paid him to represent the two corporations. He acted in complete independence of the appellees in representing the corporations.

■ Title ownership rested in the corporate entities at all times and not in any individual, including any of the stockholders. Thus, contrary to the contentions of the appellants it was not necessary to make the shareholders of the two corporations parties to the prior lawsuit. They were no more necessary parties to the prior suit than any other stockholder when his corporation is being sued.

" * * * a corporation is an entity separate and apart from its stockholders and ownership of stock in a corporation having title to property is not the same as individual ownership by such stockholders. * * " Gossett v. State, 417 S.W.2d 730, 735 (Eastland Tex.Civ.App., 1967, writ ref., n. r. e.).

■ The general rule is that a judgment in an action by or against a corporation is res judicata in a subsequent suit by or against a stockholder. Such judgment or decree is binding upon all parties to the proceeding in which it was rendered and their privies. There can be no doubt but that the appellants herein were privies to the prior proceeding. The doctrine is established that stockholders of a corporation are in privity with the corporation as to all corporate matters and, in the absence of fraud, are bound by a decree against the corporation. None of the exceptions to the above rule, including fraud or collusion, have been established in the present case. See 129 A.L.R. 1041 and authorities therein cited.

Whatever rights the appellants may have and now seek to establish and enforce against the appellees in the present cause of action are such rights, if any, which

they derived by virtue of the fact that they were stockholders in the two corporations. Such rights are derivative. They can be no greater than those of the corporations. The latter were owners of the cause of action now being asserted here by the appellants.

At the time the prior cause was filed in 1961 and throughout the time it was pending and at the time the agreed judgment was entered in the case in April of 1962 all of the alleged facts now urged by the appellants in this cause as grounds for recovery against the appellees were in existence. It therefore follows that if the appellants in the instant case have a cause of action against the appellees such cause of action had already arisen in favor of the two corporations and was ripe for litigation on their behalf prior to the time the 1961 case was filed.

There can be no question but what the cause of action sued on here by the appellants arose out of and involved the same transaction or occurrence that was the subject matter of the 1961 suit filed by the appellees herein. Further such claim did not require for its adjudication the presence of third parties outside the court's jurisdiction.

Rule 97(a), Texas Rules of Civil Procedure, "Compulsory Counterclaims," reads as follows: "A pleading shall state as a counterclaim any claim within the jurisdiction of the court, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

It has been observed that the claim now asserted by the appellants in the present suit filed in 1965 is the same claim which was in existence and had accrued in favor of the corporations before the 1961 lawsuit was filed.

■ Pursuant to the requirements of Rule 97(a), supra, it was incumbent upon the corporations to assert such claim in the 1961 lawsuit as a compulsory counterclaim in their favor and on behalf of their privies, the appellants. This they failed to do although at least two of the appellants were counseling and conferring with the attorney employed by them to represent the corporations in such suit.

By their failure to assert such claim in the prior lawsuit, as was and is required by Rule 97(a), supra, the corporations conclusively lost the right to later assert such claim. Since the appellants can derive no greater rights from the corporations than the latter possessed, the appellants are not entitled to assert the claim.

■ In order to circumvent the clear implication of the rules above enunciated in their application to the facts of this case, the appellants insist that the Texas corporation was relieved of its failure to bring a compulsory counterclaim under Rule 97(a) in the prior suit because it could neither sue nor defend in Texas courts at that time because its right to do business had been forfeited. The only evidence offered in support of this position is a letter to such effect from the Texas Secretary of State. This is the same contention as was presented in the case of Williams v. Mutual Motor Co., 67 S.W.2d 905 (Eastland Tex. Civ.App., 1933, no writ hist.) in which the Court held that such a letter was not competent evidence. Reference is made to that case and the authorities cited therein, which in our opinion controls and overrules the contention advanced by the appellants.

■ Another reason the contention must fail is because it appears from the record that the taxes, penalty and interest charges for the Texas corporation were paid to the Secretary of State within a few weeks after foreclosure by the appellees. Such payment after forfeiture, if any, revived all rights of the corporation, including the right to sue and defend in the Texas courts. Federal Crude Oil Co. v. Yount-Lee Oil Co.,

122 Tex. 21, 52 S.W.2d 56 (Tex.Sup., 1932).

■ The appellants as stockholders of the two corporations in this suit derive such rights as they may have or may legally assert from such rights as the corporations had. They cannot have greater rights than their corporations had. They cannot rise above their corporations. Thus, any defense good as to the corporations in connection with such rights as they possessed is good as to the stockholders of such corporations who claim under them. The appellants as stockholders in this cause of action therefore occupy the same position as the two corporations would occupy if they were suing on their own behalf. See 18 C.J.S. Corporations § 559, p. 1274; Vehle v. Wagner, 201 S.W.2d 636 (El Paso Tex. Civ.App., 1946, writ ref., n. r. e.).

In its conclusions of law the trial court found essentially as follows:

■ The prior suit in which judgment was entered in April, 1962, is res judicata of the present cause of action. The appellants are thus barred from bringing such action. If the prior suit does not bar the present suit it did fully and finally determine all of the issues before the court in the present suit against the appellants and such final adjudication of said issues works as a collateral estoppel against the appellants in re-litigating the same issues.

■ We are in accord with such finding and the record supports it.

The purpose of Rule 97(a) is to prevent a multiplicity of actions and to resolve in one suit all issues arising out of common and related matters, such as in the case at bar. See the authorities cited under this Rule.

■ By their eighth point the appellants attack the court's finding that a recovery by them is barred by any statute of limitation. They argue that as of the date of foreclosure on July 4, 1961, the appellees held the hotel properties as constructive trustees for all of the stockholders of the two corporations and that the present suit was filed less than four years later on March 3, 1965. That therefore appellants' suit can be barred by limitations only in the event the two year statute is applicable (Art. 5526, Vernon's Ann.Tex.Civ.St.). The appellants then argue that since theirs is a suit to impress a constructive trust on land the two year statute does not apply.

For the sake of consistency the appellants concede that they have no quarrel with the decree in the 1962 judgment which vests legal title in the appellees as against the defendant corporations. They insist that it is clear that the equitable title of the appellants vested at the time of the prior foreclosure and therefore was not dealt with by the said judgment.

Based upon our analysis of the record it appears that the appellants are alleging two separate causes of action. Primarily they rely upon their allegations of damages resulting from fraud and self dealing on the part of the appellees. Secondarily, they rely upon allegations that the appellees orally agreed to provide and guarantee financing and because of their breach of such oral contract the appellants have been damaged.

Under the record in this case we find and hold that appellants' cause of action based upon such allegations were barred. The cases and authorities relied upon by the appellants involving recovery of title to land have no application.

■ Finally we agree with the trial court that a recovery by the appellants in this cause would be inequitable. The record reflects unreasonable delay and a total lack of diligence on the part of the appellants. This caused a good faith change of position by the appellees. The record reflects that the property in question was more valuable at the time this suit was instituted and is more valuable now than it was at the time of foreclosure.

The record further supports the findings of the court to the effect that the appellants had knowledge that appellees intended to make the improvements to the hotel which would increase its value and later had knowledge that such improvements were actually being made. Yet the appellants made no effort prior to the instigation of the present suit to inform the appellees of their objection to their possession of the hotel and related properties or of their intent to contest such possession. They did not hint to appellees that they considered the prior judgment ineffective. Actually the appellants sat idly by and watched the appellees work to improve the property in question with borrowed money and their own personal contributions until the hotel and its properties finally became the sort of property that all of the original stockholders had envisioned in their earlier dreams. Unfortunately for the appellants they did not possess enough faith in the project to keep pace with the appellees who did continue to back their dreams with their cash contributions and the extension of their credit.

All points of error are overruled and the judgment of the trial court is affirmed.

BREWSTER, J., not participating.